758 F.2d 1390
 Jose Refugio Pinon LOPEZ, a/k/a Refugio Pinon, Plaintiff-Appellant,
v.
UNITED STATES IMMIGRATION AND NATURALIZATION SERVICE;
Robert Godshall, Denver District Director, U.S. Immigration
and Naturalization Service, in his official and individual
capacities; Jack Holmes, Supervisory Investigator, Denver
District Office, U.S. Immigration and Naturalization
Service, in his official and individual capacities; One
Officer Hester, Field Enforcement Officer, Denver District
Office, U.S. Immigration and Naturalization Service, in his
official and individual capacities, Defendants-Appellees.
 No. 83-2537.
 United States Court of Appeals,
Tenth Circuit.
 April 8, 1985.
 
 Susan E. Perry, Denver, Colo., for plaintiff-appellant.
 James W. Winchester, Asst. U.S. Atty., Denver, Colo. (Robert N. Miller, U.S. Atty., Denver, Colo., with him on brief), for defendants-appellees.
 Before HOLLOWAY, Chief Judge, and BARRETT and LOGAN, Circuit Judges.
 LOGAN, Circuit Judge.
 
 
 1
 Plaintiff Jose Refugio Pinon Lopez appeals from the district court's grant of defendants' motion for summary judgment. Plaintiff seeks damages, and declaratory and injunctive relief under 42 U.S.C. Secs. 1981 and 1983 based on United States Immigration and Naturalization Service (INS) officials' seizure of his driver's license at a time when he was technically in violation of U.S. immigration laws. On appeal plaintiff argues that (1) the Tenth Amendment prohibits INS officials from enforcing Colo.Rev.Stat. Sec. 42-2-103(3)(e), which forbids the issuance of a driver's license to persons whose presence in the United States is in violation of federal immigration laws; (2) the INS officials' actions were illegal because no express independent federal authorization existed for their actions; and (3) confiscating plaintiff's license violated Fifth and Fourteenth Amendment guarantees of procedural due process. In view of our resolution of these three issues, we need not consider plaintiff's argument concerning the individual defendants' qualified governmental immunity.
 
 
 2
 In October 1979, plaintiff was a passenger in a car that was stopped by officers of the INS. When he was unable to produce evidence of his lawful presence in the United States the officials took him into custody and transported him to the INS Detention Center in Aurora, Colorado. Plaintiff explained to the INS officials that his United States citizen wife had filed a petition seeking resident alien status for him.[1] The following day an INS investigator located a file containing such a petition. After contacting plaintiff's spouse INS authorities released him. Subsequently he was issued an immigrant visa and admitted to the United States for permanent residence.
 
 
 3
 Pursuant to their standard practice, the INS officials returned plaintiff's license, which they had taken at the detention center, to the Colorado Department of Revenue, which initiated proceedings to determine whether plaintiff's driver's license should be cancelled. The state authorities conducted a hearing in February 1980, at which plaintiff appeared with counsel. Following the hearing Colorado revoked plaintiff's license. Shortly thereafter, plaintiff initiated this civil rights action against the INS, its officials, and officials of the Colorado State Department of Revenue. The state officials settled with plaintiff and are no longer in the lawsuit.
 
 
 4
 * Plaintiff contends that the Tenth Amendment to the United States Constitution proscribes the actions of the INS. Relying on National League of Cities v. Usery, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976), and United States v. Best, 573 F.2d 1095 (9th Cir.1978), he reasons that the Tenth Amendment prohibits the federal government from acting in areas that are exclusively within the province of the states. Because the regulation of state drivers' licenses is an exclusive and traditional state function, he argues that the federal government may not interfere.
 
 
 5
 At the outset we note that the United States Constitution confers on Congress the power to regulate matters relating to immigration. U.S. Const. art. 1, Sec. 9, cl. 1. In addition, the Supreme Court has "repeatedly emphasized that 'over no conceivable subject is the legislative power of Congress more complete than it is over' the admission of aliens." Fiallo v. Bell, 430 U.S. 787, 792, 97 S.Ct. 1473, 1478, 52 L.Ed.2d 50 (1977) (quoting Oceanic Navigation Co. v. Stranahan, 214 U.S. 320, 339, 29 S.Ct. 671, 676, 53 L.Ed. 1013 (1909)). This broad grant of authority is exclusive to Congress. Galvan v. Press, 347 U.S. 522, 531-32, 74 S.Ct. 737, 742-43, 98 L.Ed. 911 (1954).
 
 
 6
 Thus it is with this backdrop that we examine plaintiff's claim. Garcia v. San Antonio Metropolitan Transit Authority, --- U.S. ----, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985), overruled National League of Cities and thereby rejected the argument that "traditional" state functions are insulated from federal authority. Nevertheless, another Supreme Court case more accurately addresses our issue. In Hodel v. Virginia Surface Mining & Reclamation Assn., Inc., 452 U.S. 264, 101 S.Ct. 2352, 69 L.Ed.2d 1 (1981), the Court examined whether the Tenth Amendment limited congressional power to pre-empt or displace the states' regulation of private activities affecting interstate commerce. Id. at 289-90, 101 S.Ct. at 2366-68. The Court, in finding no Tenth Amendment obstacle, "rejected the suggestion that Congress invades areas reserved to the States by the Tenth Amendment simply because it exercises its authority under the Commerce Clause in a manner that displaces the States' exercise of their police powers." Id. at 291, 101 S.Ct. at 2368. Although in the present case the INS acts pursuant to the immigration clause of Article I, Sec. 9 rather than the Commerce Clause, congressional authority under both clauses is plenary. See Kleindienst v. Mandel, 408 U.S. 753, 766, 92 S.Ct. 2576, 2583, 33 L.Ed.2d 683 (1972) (Congress' plenary power over immigration). Because Congress may entirely pre-empt state authority in immigration matters, we dismiss plaintiff's claim that the INS actions violated the Tenth Amendment.
 
 II
 
 7
 Plaintiff argues that because the INS officials acted without any federal statute or regulation expressly authorizing their conduct, their confiscation of his state driver's license exceeded the scope of their authority.
 
 
 8
 Congress has conferred upon the INS broad authority to address the problem of illegal aliens. It is a felony to make false statements in matters relating to immigration or to use falsely procured documentary evidence of citizenship. 18 U.S.C. Sec. 1015. The Immigration and Nationality Act authorizes the INS to interrogate any alien or person believed to be an alien. 8 U.S.C. Sec. 1357(a)(1). The Act permits INS officials to arrest aliens whom the officials have reason to believe are in violation of the immigration laws. Id. at Sec. 1357(a)(2). The Act empowers INS officials to detain illegal aliens and permits the Attorney General to arrange for their deportation. Id. at Sec. 1252. These provisions collectively reveal Congress' strong interest in effective enforcement of our immigration laws. The Supreme Court has recognized the significant public interest in the enforcement of immigration policies. See INS v. Miranda, 459 U.S. 14, 19, 103 S.Ct. 281, 284, 74 L.Ed.2d 12 (1982) (per curiam); United States v. Brignoni-Ponce, 422 U.S. 873, 878-79, 95 S.Ct. 2574, 2578-79, 45 L.Ed.2d 607 (1975).
 
 
 9
 Although federal law does not specifically authorize INS officials to take state drivers' licenses away from aliens whom they have reason to believe are in violation of the immigration laws, we find sufficient authority in the statutes listed above to infer such a power independent of Colorado state law. Cf. Blackie's House of Beef, Inc. v. Castillo, 659 F.2d 1211, 1219 (D.C.Cir.1981) (inferring authority to make searches of commercial establishments for illegal aliens), cert. denied, 455 U.S. 940, 102 S.Ct. 1432, 71 L.Ed.2d 651 (1982). The record indicates that illegal aliens, in an effort to escape detection by authorities, attempt to acquire any available indicia of legitimate status. This is the sort of action that 18 U.S.C. Sec. 1015 was clearly meant to combat. A driver's license is one of the most useful single items of identification for creating an appearance of lawful presence. As we understand the record, INS officials did not take plaintiff's driver's license from him until they established that indeed he was an alien who was not carrying the evidence of alien registration required by 8 U.S.C. Sec. 1304(e). The federal immigration authorities did not revoke plaintiff's right to drive on Colorado roads, they merely transmitted the license to the state authorities who could determine his right to drive, assuming that he was allowed to remain in the country. We hold that the actions of the INS officials in confiscating plaintiff's license and transmitting it to state authorities were a lawful exercise of federal authority.
 
 III
 
 10
 Plaintiff argues that the INS officials' taking of his driver's license from him without a hearing violated his constitutional right to procedural due process. In considering this contention, we note that aliens, even those lawfully within the country, do not have most of the constitutional rights afforded to citizens. They may be deported for considerations of race, politics, activities, or associations that the government could not punish them for if they were citizens. Harisiades v. Shaughnessy, 342 U.S. 580, 586-88, 72 S.Ct. 512, 517-19, 96 L.Ed. 586 (1952); Fong Yue Ting v. United States, 149 U.S. 698, 13 S.Ct. 1016, 37 L.Ed. 905 (1893). They may be arrested to administrative warrant issued without an order of a magistrate, Abel v. United States, 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960), and held without bail, Carlson v. Landon, 342 U.S. 524, 72 S.Ct. 525, 96 L.Ed. 547 (1952). If accused of committing a crime against the laws of the United States, however, at least a resident alien is entitled to the constitutional protections of the Fifth and Sixth Amendments. Wong Wing v. United States, 163 U.S. 228, 16 S.Ct. 977, 41 L.Ed. 140 (1896); Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886). And an alien's property may not be taken without just compensation, absent a state of war existing between the alien's country and the United States. Russian Volunteer Fleet v. United States, 282 U.S. 481, 51 S.Ct. 229, 75 L.Ed. 473 (1931). But that does not mean that an alien who has violated United States immigration laws is entitled to a hearing before the government may deprive him of an item of his personal property that would assist him in avoiding detection as an alien.
 
 
 11
 We do not have to decide whether license seizures from persons believed to be aliens violating immigration laws require a due process hearing.[2] As we understand the facts of this case, plaintiff's license was not confiscated until he had admitted to being an alien and was ascertained not to be carrying the evidence of alien registration required by federal law. In fact plaintiff had overstayed a grant of voluntary departure by several months. While his wife had filed an I-130 petition to permit him to stay permanently in the United States, the petition had not been acted upon, and he was thus technically an alien illegally in the country at the time his license was taken. Given those circumstances we hold that the INS was not required to conduct a due process hearing either before or after confiscating identification papers that could assist his avoiding detection as an alien. The federal immigration authorities did not thereby deprive plaintiff of his right to drive in Colorado. That decision was in the hands of state authorities, who settled their case with plaintiff and are not involved in this appeal. If plaintiff's license were still valid under state law, apparently he would be entitled to dismissal of a complaint against him in state court for driving without a license. See Colo.Rev.Stat. Sec. 42-2-113(1) (complaint will be dismissed if alleged offender produces in court a valid license issued before his arrest).
 
 
 12
 AFFIRMED.
 
 
 
 [1]
 A United States citizen may obtain permanent residence for an alien spouse by filing a Form I-130 petition on behalf of the alien. Immigration Law and Defense Sec. 4.10(a) (National Lawyer's Guild 1979). Plaintiff's wife had previously completed this petition. Nevertheless, because plaintiff had moved without leaving a forwarding address, the petition was never formally processed
 
 
 [2]
 The INS appears to have significant safeguards to ensure that a license will be taken only from an alien who is violating federal law. INS regulations provide that after a suspected alien's warrantless arrest, an INS officer (other than the arresting officer if one is available) shall examine the suspected alien. If the second officer is satisfied that prima facie evidence of illegality exists, the case is referred to an immigration judge. 8 C.F.R. Sec. 287.3. Further, federal law requires a legal alien to carry "at all times" documents demonstrating his or her lawful alien status. Failure to do so is a federal misdemeanor. See 8 U.S.C. Sec. 1304(e). Presumably only after establishing both that the suspect is an alien and in violation of the immigration law is the license confiscated