**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 23 2004**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

     Plaintiff - Appellant,

v.

DENIS GISEMBA ATANDI,

     Defendant - Appellee.

No. 03-4014

---

**Appeal from the United States District Court**
**for the District of Utah**
**(D.C. No. 2:02-CR-515-DAK)**

---

Michael S. Lee, Assistant United States Attorney, Salt Lake City, Utah, (Paul M. Warner, United States Attorney, with him on the briefs) for Plaintiff - Appellant.

S. Austin Johnson, Johnson Law Firm, PC, Orem, Utah, for Defendant - Appellee.

---

Before **EBEL**, **ANDERSON,** and **HARTZ**, Circuit Judges.

---

**EBEL**, Circuit Judge.

---

     Defendant Denis Gisemba Atandi, a citizen of Kenya, was charged under 18 U.S.C. § 922(g)(5)(A) as an alien illegally or unlawfully in the United States in possession of firearms. This case requires us to decide whether § 922(g)(5)(A)'s

firearm disability applies to aliens who (1) have violated the conditions of their visa status but who have not yet been ordered removed from the country, and (2) have had a Form I-130 Petition for Alien Relative filed on their behalf but who have not yet applied for permanent residence or adjustment of status. We hold that such individuals, unless otherwise authorized to be in this country, are illegally or unlawfully in the United States for purposes of § 922(g)(5)(A), and that they are prohibited from possessing firearms and subject to prosecution under § 922(g)(5)(A) if they do so.

**BACKGROUND**

Atandi originally entered the United States as a tourist in 1996. In October 1999, he received F-1 student visa status and was given permission to remain in the country for the duration of his status. According to the government, Atandi stopped attending classes about two months after receiving his student visa, and Atandi admits that he failed to maintain student status.[1] Consequently, in December 2000, the Immigration and Naturalization Service (INS) initiated removal proceedings.

---

[1] For students present in the United States under an F-1 student visa, such as Atandi, "[d]uration of status is defined as the time during which an F-1 student is pursuing a full course of study at an educational institution. ... The student is considered to be maintaining status if he or she is making normal progress toward completing a course of study." 8 C.F.R. § 214.2(f)(5)(i).

About a month earlier, in November 2000, Atandi had married a lawful permanent resident, Teodora Stancheva.[2]  In February 2001, as Atandi faced the prospect of removal hearings, she filed a Form I-130 Petition for Alien Relative on his behalf.  The INS approved Teodora Atandi's I-130 petition in January 2002.  That approval officially established the Atandis' marital relationship for immigration purposes, and it was one prerequisite that had to be satisfied before Denis Atandi could apply for permanent residence or adjustment of status.  Yet the record indicates that Atandi did not file a Form I-485 Application to Register Permanent Residence or Adjust Status at any time relevant to this case.

On March 7, 2002, an Immigration Judge found Atandi deportable.  However, Atandi was not ordered deported at that time, and the Immigration Judge scheduled later hearings on the issue of relief from removal.

In May 2002, Atandi was arrested for possessing various firearms and ammunition while illegally or unlawfully in the United States, and he was later charged in a single-count indictment under 18 U.S.C. § 922(g)(5)(A) for that offense.  According to the government, Atandi had nine firearms, including an AK-47 and a Brushmaster AR-15 assault rifle.  Atandi admits that he possessed ammunition and at least one firearm, but contends that he was then lawfully

---

[2]  Although Atandi's wife had applied for U.S. citizenship, at all times relevant to the instant case she was a lawful permanent resident.

present in the United States. As of that time, his removal proceedings were still pending before the Immigration Judge.

The district court dismissed the indictment on the ground that Atandi's presence in this country was not illegal or unlawful at the time of the alleged violation. The government now appeals that decision.

**ANALYSIS**

The government can establish that a defendant was "illegally or unlawfully in the United States" under § 922(g)(5)(A) if it proves that the defendant was in this country "without authorization" at the time he or she possessed firearms or ammunition. See United States v. Hernandez, 913 F.2d 1506, 1513 (10th Cir. 1990). Although Atandi had violated the conditions of his student visa, the district court reasoned that he was nevertheless authorized to remain in the United States (1) because no final removal order had been issued, and (2) because his wife had filed and the government had approved a Form I-130 Petition for Alien Relative on his behalf.

We take jurisdiction under 18 U.S.C. § 3731 and 28 U.S.C. § 1291, and we review de novo the district court's dismissal of the indictment based on its interpretation of the underlying criminal statute. See United States v. Thompson, 287 F.3d 1244, 1248-49 (10th Cir. 2002). We reject both of the district court's

rationales, and hold that dismissal of the indictment was improper.  Accordingly,

we REVERSE and REMAND for further proceedings.


A.  Section 922(g)(5)(A) is not Limited to Aliens who are Subject to a Removal Order.

As noted above, Atandi was charged under 18 U.S.C. § 922(g)(5)(A), which

prohibits aliens "illegally or unlawfully in the United States" from possessing

firearms.[3]  Atandi first asserts that his presence in the United States was not

illegal or unlawful because he had not formally been ordered removed.  We do not

agree.  Atandi's argument finds no support in the language of § 922(g),

contradicts a regulation interpreting that statute, and asks us to part company with

each of the other Courts of Appeals that have addressed this issue.

Rather, we hold that an alien who is only permitted to remain in the United

States for the duration of his or her status (as a student, for example) becomes

"illegally or unlawfully in the United States" for purposes of § 922(g)(5)(A) upon

commission of a status violation.[4]  We look to the date of the status violation to

---

[3]  18 U.S.C. § 922(g) reads, in relevant part: "It shall be unlawful for any person ... who, being an alien ... is illegally or unlawfully in the United States ... to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."

[4]  In the alternative, Atandi contends that he was permitted to stay in the United States not only because of his student status, but also because an I-130

(continued...)

determine when the alien's presence became unauthorized, not to when that violation is recognized by official decree.

To begin, Congress has proven quite capable of demonstrating the circumstances in which it intended federal firearms disabilities to hinge upon the result of an adjudication. For example, it is unlawful to possess a firearm if one "has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year," 18 U.S.C. § 922(g)(1); "has been adjudicated as a mental defective," id. at § 922(g)(4); "is subject to a court [restraining] order" under certain circumstances, id. at § 922(g)(8); or "has been convicted in any court of a misdemeanor crime of domestic violence," id. at § 922(g)(9). In contrast, the firearm restriction that applies to aliens "illegally or unlawfully in the United States" makes no reference to an order of removal or other adjudication. See id. at § 922(g)(5)(A). If Congress had intended this prohibition to apply only to aliens subject to a removal order, we are satisfied that it would have said so. Cf. Russello v. United States, 464 U.S. 16, 23 (1983) (when Congress uses particular language in one section of a statute but not another, it is presumed that such language does not govern those sections in which it was omitted).

---

[4](...continued)
petition had been filed on his behalf. We address this argument below in Part B.

Further, an administrative regulation interpreting § 922(g)(5)(A) makes clear that an alien who violates the conditions of his or her status is illegally or unlawfully in the United States under that statute regardless of whether he or she has actually been ordered removed. Under 27 C.F.R. § 478.11, an alien "illegally or unlawfully in the United States" is defined as an alien "not in valid immigrant, nonimmigrant or parole status." More specifically, the regulation lists as an example of an alien illegally or unlawfully in the United States a nonimmigrant "whose authorized period of stay has expired or who has violated the terms of the nonimmigrant category in which he or she was admitted." Id. Atandi, who concedes that he violated the terms of his student status, was no doubt illegally or unlawfully in the United States as that term is defined by regulation.[5]

This regulation was enacted by the Bureau of Alcohol, Tobacco and Firearms (ATF), which had been delegated authority to implement § 922(g). See 18 U.S.C. § 926(a) (authorizing "such rules and regulations as are necessary to

---

[5] Atandi contends that his failure to maintain student status is irrelevant under § 478.11 because he was originally "admitted" as a tourist, and only later obtained student status. This argument need not detain us long because the examples of illegal presence listed in this regulation are merely illustrative. See 27 C.F.R. § 478.11 ("The terms 'includes' and 'including' do not exclude other things not enumerated which are in the same general class."). The test under § 478.11 is whether the alien was "in valid immigrant, nonimmigrant or parole status." See id. As of May 2002, Atandi clearly was not.

carry out the provisions of this chapter");[6] see also United States v. Mead Corp.,

533 U.S. 218, 226-27 (2001) (an agency's interpretation of a statutory provision

qualifies for Chevron deference when made in the exercise of delegated authority

to make rules carrying the force of law).  Without determining whether full

Chevron deference is owed to this ATF interpretation of § 922(g)(5)(A) in light of

the criminal nature of that statute, we unquestionably owe "some deference" to

the ATF's regulation.  National Labor Relations Bd. v. Okla. Fixture Co., 332

F.3d 1284, 1286-87 (10th Cir. 2003) (en banc); see also Babbitt v. Sweet Home

Chapter of Cmtys. for a Greater Ore., 515 U.S. 687, 703 (1995) (applying

Chevron deference to regulations interpreting parts of the Endangered Species Act

that provide for criminal penalties).  Here, the ATF regulation is both reasonable

and consistent with our interpretive norms for criminal statutes.  See Okla.

Fixture Co., 332 F.3d at 1287.

Finally, the Fifth and Eighth Circuits have addressed the same question

presented in our case, both holding that an alien who commits a status violation is

illegally or unlawfully in the United States, regardless of whether a removal order

has been issued.  United States v. Igbatayo, 764 F.2d 1039, 1040 (5th Cir. 1985)

---

[6] In 2002, the Homeland Security Act amended 18 U.S.C. § 926(a), transferring the authority to implement certain gun control statutes from the Secretary of the Treasury to the Attorney General.  See Pub. L 107-296, § 1112(f)(6).  This shift corresponded with ATF's move from the Department of the Treasury to the Department of Justice.  See id. at § 1111.

(applying § 922(a)(6) and ruling that the alien was illegally in the United States because "[a]fter failing to maintain the student status required by his visa, Igbatayo was without authorization to remain in this country."); United States v. Bazargan, 992 F.2d 844, 847 (8th Cir. 1993) (upholding a conviction under § 922(g)(5) and stating that a "nonimmigrant alien F-1 student becomes an illegal alien subject to deportation by failing to comply with the transfer procedures set forth in the INS regulations," notwithstanding a pending application for asylum and employment authorization).

Faced with this authority, Atandi relies upon an internal INS memorandum from September 1997 stating that for purposes of 8 U.S.C. § 1182(a)(9)(B) — Section 212(a)(9)(B) of the Immigration and Nationality Act — an alien's "unlawful presence" begins to run as of the immigration judge's status violation determination, not from the date of the status violation.[7]  Yet the INS memo limited its discussion to § 1182(a)(9)(B), stating that "[i]t must be emphasized that an alien may still be considered unlawfully present or in violation under other

---

[7]  This statute lists certain aliens who are ineligible to receive visas or be admitted to the United States.  8 U.S.C. § 1182(a).  Among the aliens deemed inadmissible are (1) aliens "unlawfully present" for more than 180 days but less than one year who voluntarily left the United States and who seek reentry within three years of departure, and (2) aliens "unlawfully present" for a year or more who seek readmission within 10 years of departure.  Id. at § 1182(a)(9)(B)(i). The September 1997 INS memorandum marked a change in course for the agency, which had previously taken the position that unlawful presence began to accrue under this statute upon a status violation.

provisions of the Act (e.g., for purposes of initiating a removal proceeding) even though he or she is not deemed unlawfully present under the technical requirement of § [1182](a)(9)(B)(ii)." We need not express any opinion as to the merits of the INS memo's legal conclusions.[8] For our purposes, it suffices to note that, in light of this express disclaimer, the memo's interpretation of 8 U.S.C. § 1182(a)(9)(B) does not help guide our interpretation of the criminal statute at issue in the instant case, 18 U.S.C. § 922(g)(5)(A).

In short, based on the record before us on appeal, we hold that the government can show that Atandi was illegally or unlawfully present in this country as of May 2002 because he had been authorized to be here as a student but failed to satisfy the conditions of his student status. The fact that he had not yet been ordered removed is not relevant to the question of whether or not his presence in the United States was then authorized. Removal proceedings were the process by which the government sought to expel Atandi from the country based

---

[8] An agency's internal interpretive guidelines do not warrant <u>Chevron</u> deference. <u>See</u> <u>Christensen v. Harris County</u>, 529 U.S. 576, 587 (2000). The relevant statutory provision addressed in this INS memorandum is 8 U.S.C. § 1182(a)(9)(B)(ii), which states: "For purposes of this paragraph, an alien is deemed to be unlawfully present in the United States if the alien is present in the United States after the expiration of the period of stay authorized by the Attorney General or is present in the United States without being admitted or paroled."

on his illegal presence.  Those proceedings did not play the substantive role of making Atandi's presence illegal or unauthorized in the first place.[9]

### B.  Approval of a Form I-130 Petition for Alien Relative does not Authorize an Alien to Remain in the United States

Atandi next contends that he was authorized to remain in this country because the government had approved a Form I-130 Petition for Alien Relative that his wife, a lawful permanent resident, had filed on his behalf.  Again, we disagree.  We hold that an approved I-130 petition does not authorize an alien to stay in the United States, and therefore does not lift 18 U.S.C. § 922(g)(5)(A)'s firearm restriction for aliens illegally or unlawfully present in this country.

This question requires us briefly to outline the procedures an alien must follow when seeking to immigrate to the United States as the spouse of a lawful permanent resident.  For such aliens, immigrant visas are available subject to a numerical cap based largely on worldwide immigration levels.  See 8 U.S.C. §§

---

[9] In the alternative, Atandi argues that he became authorized to be in the United States once removal proceedings were initiated and he posted bond.  We disagree.  The government's effort to remove an illegal alien does not somehow designate the alien as "lawfully" in the country for purposes of § 922(g)(5)(A) during the pendency of the removal proceedings.

Furthermore, we note that Atandi's interpretation of § 922(g)(5)(A) would lead to absurd results.  We can envision no reason why Congress would grant illegal aliens the ability lawfully to arm themselves precisely at the moment the government commences its effort to remove them from the country.

1151(a)(1); 1153(a)(2)(A).[10] To procure an immigrant visa, the lawful permanent resident spouse first must file a Form I-130 Petition for Alien Relative to establish his or her relationship with the spouse who seeks to immigrate to the United States. See 8 U.S.C. § 1154(a)(1)(B)(i); Drax v. Reno, 338 F.3d 98, 114 (2d Cir. 2003). The government will approve the I-130 visa petition so long as it determines that the familial relationship asserted is bona fide. Drax, 338 F.3d at 114. Approval of the I-130 petition essentially places the nonresident alien on a waiting list according to his or her "priority date" (based on when the petition was filed) and "preference category" (based on the familial relationship between the alien seeking permanent residence and the person who filed the I-130 visa petition). Id.; 8 C.F.R. § 245.1(g)(1).

The nonresident alien will eventually become eligible to file a Form I-485 Application to Register Permanent Residence or Adjust Status when his or her priority date is current — i.e., at the time an immigrant visa is immediately available. Drax, 338 F.3d at 115; 8 C.F.R. § 245.1(g)(1).[11] "Once an alien's

---

[10] A different procedure applies when an alien seeks permanent residence based on marriage to a U.S. citizen, as opposed to a lawful permanent resident. Such prospective immigrants are not subject to the numerical limits discussed above, and may therefore file an I-485 application together with the I-130 Petition for Alien Relative. See 8 U.S.C. §§ 1151(b)(2)(A)(i); 1255(a); 8 C.F.R. § 245.2.

[11] 8 C.F.R. § 245.1(g)(1) provides, in relevant part: "An alien is ineligible for the benefits of section 245 of the Act [to apply for an immigrant visa] unless an immigrant visa is immediately available to him or her at the time the

(continued...)

- 12 -

I-130 petition has been approved by the INS, an alien must still wait until a visa is 'immediately available' in order to file his I-485 application." Drax, 338 F.3d at 114. After the alien files an I-485 application, he or she may accept employment in this country, subject to certain limits. 8 C.F.R. § 274a.12(c)(9).

With this procedure in mind, some courts have held that aliens who have filed an I-485 application are authorized to be in the United States while that application is pending. See United States v. Brissett, 720 F. Supp. 90, 91 (S.D. Tex. 1989) ("United States immigration regulations permit an applicant for adjustment of status to permanent resident ... to remain in the country pending disposition of the application."); Yesil v. Reno, 958 F. Supp. 828, 843 (S.D.N.Y. 1997) ("8 C.F.R. § 274a.12 ... does not explicitly state that an alien who applies for adjustment to lawful permanent resident status is lawfully in the United States during the pendency of the application, [but] the regulation certainly implies it.").

Along similar lines, in dicta, we have stated that "[b]ecause aliens in the process of applying for legalization of their immigration status [pursuant to

(...continued)
application is filed. If the applicant is a preference alien, the current Department of State Bureau of Consular Affairs Visa Bulletin will be consulted to determine whether an immigrant visa is immediately available. An immigrant visa is considered available for accepting and processing the Form I-485 [if] the preference category applicant has a priority date on the waiting list which is earlier than the date shown in the Bulletin (or the Bulletin shows that numbers for visa applicants in his or her category are current)."

- 13 -

8 U.S.C. §§ 1160 and 1255a] may not be deported, they are not unlawfully in the United States." See United States v. Hernandez, 913 F.2d 1506, 1513-14 (10th Cir. 1990) (holding that an alien was illegally in the United States under 18 U.S.C. § 922(g)(5) when he purchased a gun prior to seeking amnesty).[12] But see United States v. Bazargan, 992 F.3d 844, 848-49 (8th Cir. 1993) (holding that an alien was subject to § 922(g)(5)'s firearm disability even though he had filed an asylum petition because "the grant of an employment authorization is not part of some larger determination by the INS permitting the alien to purchase weapons, regardless of other violations of his status. ... [T]he employment authorization did not have the effect of converting Bazargan back into a legal alien."

In contrast, courts have consistently held that an alien is not authorized to be in the United States simply because an I-130 visa petition had been filed on his or her behalf and/or approved by the government. See Der-Rong Chour v. INS, 578 F.2d 464, 468 (2d Cir. 1978) ("INS's approval of [an alien's] I-130 petition,

---

[12] We have doubts about the dicta in Hernandez suggesting that an amnesty applicant's authorization to seek employment in the United States is equivalent to authorization to reside in this country for purposes of § 922(g)(5). However, because it is only dicta and because the correctness or incorrectness of that statement is not dispositive in the instant case, we do not take the occasion either to affirm or disavow that language here. As we explain below, whatever the effect of a filed amnesty application or I-485 application, it is clear that an I-130 petition does not authorize an alien's presence in this country, and here Atandi had not filed an I-485 application at the time of the alleged firearm violation.

moreover, does not ... permit him to remain in the United States."); Perales v. Casillas, 903 F.2d 1043, 1048 (5th Cir. 1990) ("[N]othing in the Immigration and Nationality Act immunizes a deportable alien from deportation when a visa petition [an I-130 petition] filed on his behalf is approved."); cf. Tongatapu Woodcraft Haw., Ltd. v. Feldman, 736 F.2d 1305, 1308 (9th Cir. 1984) ("It is important to note that a visa petition is not the same thing as a visa. An approved visa petition is merely a preliminary step in the visa application process. It does not guarantee that a visa will be issued, nor does it grant the alien any right to remain in the United States.") (emphasis omitted). Because an I-130 visa petition does not authorize an alien to stay in the United States, an alien may be subject to 18 U.S.C. § 922(g)(5)(A)'s firearm restriction regardless of whether an I-130 petition on his or her behalf has been filed or approved. See United States v. Revuelta, 109 F. Supp. 2d 1170, 1174-75 (N.D. Cal. 2000).[13]

In our case, Atandi's wife had filed an I-130 Petition for Alien Relative on Atandi's behalf and the government had approved that petition. Atandi had not yet sought permanent resident status by filing an I-485 application. We hold that

---

[13] There is some dicta in Lopez v. INS, 758 F.2d 1390 (10th Cir. 1985) that appears to confuse the I-130 and I-485 forms. We stated that "a United States citizen may obtain permanent residence for an alien spouse by filing a Form I-130 petition on behalf of the alien." Id. at 1391 n.1; see also id. at 1394. Actually, an I-485 application is also required, although when the alien's spouse is a U.S. citizen the two forms may be filed simultaneously. 8 U.S.C. § 1151(b)(2)(A)(i).

- 15 -

Atandi's approved I-130 petition will not prevent the government from demonstrating that he was illegally or unlawfully present in the United States in May 2002, subject to federal firearms disabilities.

**CONCLUSION**

The record before us on appeal supports the government's claim that Atandi was illegally or unlawfully present in the United States for purposes of 18 U.S.C. 922(g)(5)(A) at the time he was discovered in possession of firearms and various ammunition. An alien's illegal presence in this country does not depend upon a formal removal order, and an I-130 petition does not authorize an alien to stay in the United States. Accordingly, we REVERSE the judgment of the district court dismissing the indictment against Atandi, and REMAND for further proceedings.