[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-15860

_____

D. C. Docket No. 6:16-cr-00003-JA-DAB-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

HAMID MOHAMED AHMED ALI REHAIF,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(March 26, 2018)

Before ED CARNES, Chief Judge, WILLIAM PRYOR, and DUBINA, Circuit Judges.

DUBINA, Circuit Judge:

We *sua sponte* vacate our prior published opinion, *United States v. Rehaif*, 868 F.3d 907 (11th Cir. 2017), and substitute this revised opinion in lieu thereof.

Hamid Mohamed Ahmed Ali Rehaif ("Rehaif"), a citizen of the United Arab Emirates, appeals his convictions for possessing a firearm and ammunition while being illegally or unlawfully in the United States, in violation of 18 U.S.C. §§ 922(g)(5)(A) and 924(a)(2).  Rehaif argues that the district court erred by instructing the jury that the government did not have to prove that he knew he was in the United States unlawfully.  Rehaif further argues that the district court abused its discretion by failing to instruct the jury that an alien is not unlawfully in the United States until the U.S. Citizenship and Immigration Services ("USCIS") or an immigration judge has declared him unlawfully present.  After reviewing the record, reading the parties' briefs, and having the benefit of oral argument, we affirm the convictions.

## I.    BACKGROUND

The United States issued Rehaif an F-1 nonimmigrant student visa to study mechanical engineering at the Florida Institute of Technology ("FIT") on the condition that he pursue a full course of study—except as otherwise authorized by a "Designated School Official" —or engage in training following graduation. When applying for his F-1 student visa, Rehaif signed a Certificate of Eligibility for Nonimmigrant Student Status, certifying that he agreed to comply with the

2

terms and conditions of his admission and that he sought "to enter or remain in the United States temporarily, and solely for the purpose of pursuing a full course of study."

After three semesters at FIT, Rehaif was academically dismissed on December 17, 2014. One month later, on January 21, 2015, FIT sent Rehaif an email stating that he had been academically dismissed and that his "immigration status will be terminated on February 5, 2015, unless you transfer out before that date, or you notify our office that you have already left the United States." Rehaif did not take any action. As such, according to the Department of Homeland Security's foreign student database, Rehaif's status was officially terminated on February 23, 2015.

On December 2, 2015, Rehaif went to a shooting range. He purchased a box of ammunition and rented a firearm for one hour. Videos from the shooting range show Rehaif firing two different firearms. The firearms were manufactured in Austria and then imported into the United States through Georgia. The ammunition was manufactured in Idaho.

Six days later, an employee at the Hilton Rialto Hotel in Melbourne, Florida, called the police to report that a guest at the hotel—Rehaif—had been acting suspiciously. Special Agent Tom Slone with the Federal Bureau of Investigation went to the hotel to speak with Rehaif. Rehaif admitted, in an unrecorded

3

interview, that he had fired two firearms at the shooting range and that he was aware that his student visa was out of status because he was no longer enrolled in school.  Rehaif consented to a search of his hotel room, where the agents found the remaining ammunition that he had purchased at the shooting range.

A federal grand jury charged Rehaif with two counts of violating § 922(g)(5)(A).  That statute provides that:

> (g) It shall be unlawful for any person —
> . . .
>      (5) who, being an alien —
>          (A) is illegally or unlawfully in the United States . . .
> to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition. . . .

18 U.S.C. § 922(g)(5)(A).  Section 922(g) does not itself provide for any punishment.  That gap is filled by § 18 U.S.C. § 924(a)(2), which states that:

> Whoever knowingly violates subsection . . . (g) . . . of section 922 shall be fined as provided in this title, imprisoned not more than 10 years, or both.

18 U.S.C. § 924(a)(2).

Before trial, both parties submitted proposed jury instructions to the district court.  During the charge conference, the government requested an instruction stating that "[t]he United States is not required to prove that the defendant knew that he was illegally or unlawfully in the United States."  Rehaif disagreed, arguing that the United States had to prove both that he had knowingly possessed a firearm and that he had known of his prohibited status–that he was illegally or unlawfully

4

in the United States when he had possessed the firearm.  The district court overruled Rehaif's objection.

The government also requested an instruction stating that "[t]he alien's presence becomes unlawful upon the date of the status violation."  Rehaif, on the other hand, proposed an instruction stating that "[a] person admitted to the United States on a student visa does not become unlawfully present until an Immigration Officer or an Immigration Judge determines that [he] ha[s] violated [his] student status."  The district court gave an instruction closer to the government's request, telling the jury that "[a]n alien illegally or unlawfully in the United States is an alien whose presence within the United States is forbidden or not authorized by law."  Rehaif then perfected this appeal, challenging the district court's jury instructions with respect to the "knowingly" requirement and the "illegal or unlawful" requirement, as well as the constitutionality of §922.[1]

## II.    STANDARD OF REVIEW

This court will review the district court's jury instructions "*de novo* to determine whether they misstate the law or mislead the jury to the prejudice of the objecting party."  *United States v. James*, 642 F.3d 1333, 1337 (11th Cir. 2011) (quotation omitted).

---

[1] Rehaif argues that 18 U.S.C. § 922(g) is unconstitutional, both facially and as applied, because it has too attenuated a connection to interstate commerce.  This argument is foreclosed by circuit precedent.  *See United States v. Wright*, 607 F.3d 708, 715-16 (11th Cir. 2010); *United States v. Scott*, 263 F.3d 1270, 1271-74 (11th Cir. 2001).

### III.    ANALYSIS

On appeal, Rehaif challenges the district court's jury instructions regarding the "knowingly" requirement and the "illegal or unlawful" requirement.

With respect to the "knowingly" requirement, Rehaif argues that the district court erred by instructing the jury that the government need not prove that he knew he was in the United States illegally or unlawfully, because the phrase "knowingly violates," in 18 U.S.C. § 924(a)(2), modifies § 922(g) to require proof that the defendant knew at the time that he possessed the firearm that he was in the United States illegally or unlawfully.  Rehaif further argues that, although several courts have ruled that knowledge of one's status as a convicted felon is not necessary for a conviction under § 922(g)(1), the question of whether knowledge is necessary for a conviction under § 922(g)(5)(A) is not settled.  As such, Rehaif argues, the district court's jury instruction misstated the law and eviscerated his planned defense that he did not know he was in the United States illegally or unlawfully.

The government argues that a violation of § 922(g) only requires that the defendant knowingly possessed a firearm, not that the defendant had knowledge of his status, and that nothing in the statute indicates that § 922(g)(5)(A) has a different mens rea requirement.  For support, the government points to the fact that no circuit has required proof of the defendant's knowledge of his prohibited status under any subsection of § 922(g).  The government also argues that § 922(g)

6

consolidates previously separate sections that did not contain mens rea provisions but that had been interpreted to require knowledge of the firearm possession, and that Congress did not intend to expand the mens rea requirement when it consolidated the statutes.

With respect to the "illegal or unlawful" requirement, Rehaif argues that federal immigration law defines "unlawful presence" as presence in the United States after the expiration of the period of stay authorized by the Attorney General. This definition, he argues, supports his position that a person is not unlawfully in the United States until a USCIS official or an immigration judge declares him to be so. Additionally, Rehaif argues that both his position and the government's position have a basis in case law or statute and that the ambiguity in the statute requires the application of the rule of lenity.

The government responds that, although this court has not addressed this issue, five other circuits have held that an alien who is permitted to remain in the United States only for the duration of his status becomes illegally or unlawfully in the United States under § 922(g)(5)(A) upon the violation of his status. Therefore, Rehaif became unlawfully in the United States the moment he failed to comply with the conditions of his F-1 visa. The government also argues that the case Rehaif cites to support his position does not state that an alien only becomes illegally or unlawfully present when a USCIS officer or immigration judge

7

determines that he has violated his status.  Moreover, the government argues that because the statute is not grievously ambiguous, the rule of lenity does not apply.

In short, we are left with two questions: (1) what does "knowingly" modify; and (2) what does "illegally or unlawfully" mean?  Each argument will be addressed in turn.

## A.  "<u>Knowingly</u>"

Under 18 U.S.C. § 922(g), persons falling within particular categories are prohibited from possessing any firearm or ammunition that has been transported in interstate commerce.  To successfully prosecute a defendant under § 922(g), the government must prove three elements: (1) the defendant falls within one of the categories listed in the § 922(g) subdivisions ("the status element"); (2) the defendant possessed a firearm or ammunition ("the possession element"); and (3) the possession was "in or affecting [interstate or foreign] commerce."  *See* 18 U.S.C. § 922(g).  By its own terms, § 922(g) does not have a mens rea requirement; instead, the applicable mens rea is set out by § 924(a)(2), which provides that "[w]hoever knowingly violates subsection . . . (g) . . . of section 922 shall be fined as provided in this title, imprisoned not more than 10 years, or both." 18 U.S.C. § 924(a)(2).  It is undisputed that the mens rea requirement applies to the possession element—that Rehaif "knowingly possessed" the firearm.  *See United States v. Winchester*, 916 F.2d 601, 604 (11th Cir. 1990).  At issue is whether the

"knowingly" requirement also applies to the status element—that Rehaif knows he is an alien "illegally or unlawfully in the United States."  18 U.S.C. § 922(g)(5)(A).

As Rehaif points out, the strongest argument in favor of requiring proof of mens rea with respect to the status element is laid out in then-Judge, now Justice Gorsuch's concurrence in *United States v. Games-Perez.*  667 F.3d 1136, 1142 (10th Cir. 2012) (Gorsuch, J., concurring in judgment).  Acknowledging that prior precedent dictated that the mens rea requirement does not apply to the status element, then-Judge Gorsuch concluded that the plain language of the statute compelled the opposite conclusion.  *Id.* ("[Prior precedent] reads the word "knowingly" as leapfrogging over the very first § 922(g) element and touching down only at the second.  This interpretation defies linguistic sense—and not a little grammatical gravity.").  In drawing such a conclusion, then-Judge Gorsuch noted that, "Congress gave us three elements in a particular order.  And it makes no sense to read the word 'knowingly' as so modest that it might blush in the face of the very first element only to regain its composure and reappear at the second."  *Id.* at 1144.  He also pointed out that "[t]he Supreme Court has long held that courts should presum[e] a mens rea requirement attaches to each of the statutory elements that criminalize otherwise innocent conduct."  *Id.* at 1145 (quotations omitted) (alteration in original).

9

While then-Judge Gorsuch opined that § 922(g) "is a perfectly clear law as it is written, plain in its terms, straightforward in its application," *id.,* there is evidence to suggest otherwise.  The fact that § 924(a)(2) only punishes defendants who "knowingly violate" § 922(g)  begs the question "what does it mean to knowingly violate the statute?"  Does the statute proscribe merely conduct, or both conduct and the surrounding circumstances that make the conduct a federal crime? *See United States v. Langley*, 62 F.3d 602, 613 (4th Cir. 1995) (en banc) (Phillips, J., concurring in part and dissenting in part) *cert. denied*, 516 U.S. 1083, 116 S. Ct. 797 (1996).  Indeed, then-Judge Gorsuch acknowledged that the term "knowingly" in § 924(a)(2) does not apply to *every* provision of § 922(g), *Games-Perez*, 667 F.3d at 1144, for § 922(g) requires the "firearm or ammunition [to have] been shipped or transported in interstate or foreign commerce," and the Supreme Court has repeatedly explained that "the existence of [a] fact that confers federal jurisdiction need not be one in the mind of the actor at the time he perpetrates the act." *Torres v. Lynch*, 136 S. Ct. 1619, 1631 (2016) (quoting *United States v. Feola*, 420 U.S. 671, 676 n.9, 95 S. Ct. 1255, 1260 n. 9 (1975)).  The plain text of the statutes does not require that the defendant "know" every detail outlined in § 922(g).  At most, then-Judge Gorsuch's concurrence serves to illustrate that the language of § 922 and § 924(a)(2) is not "perfectly clear," and that other tools of

10

interpretation must be employed to ascertain whether a mens rea requirement attaches to the status element.

In *United States v. Jackson*, we resolved the issue of whether "knowingly" applies to the status element of § 922(g).[2]  120 F.3d 1226 (11th Cir. 1997). *Jackson* involved § 922(g)(1), which is identical to § 922(g)(5)(A), except that it proscribes gun possession by felons, as opposed to possession by those illegally or unlawfully in this country.  *Compare* 18 U.S.C. § 922(g)(1), *with* § 922(g)(5)(A). Much like Rehaif, the defendant in *Jackson* argued that "the district court erroneously instructed the jury that it was not necessary for [him] to know that he had been convicted of a felony" to find him guilty of violating § 922(g)(1). *Jackson,* 120 F.3d at 1229.  Relying on cases from the Fourth and Fifth Circuits, this court held that the government need not prove that the defendant knew of his prohibited status.  *See id.* (citing *Langley*, 62 F.3d at 604–06 (majority opinion); *United States v. Dancy*, 861 F.2d 77, 81 (5th Cir.1988)).  We our bound by this decision "[u]nder our prior precedent rule, [which requires us] to follow a binding precedent in this Circuit unless and until it is overruled by this court en banc or by

---

[2] This court has not specifically addressed the illegal-alien prohibited status of § 922(g)(5)(A), but we have recognized that "each subdivision of subsection (g) differs only in its requirement that the offender have a certain "status under the law."  *Winchester*, 916 F.2d at 605 (quotations omitted).  Not only would it be bizarre for two § 922(g) subdivisions to have different mens rea requirements, but also, there is nothing in the text or history of § 922 to support such deviation.

the Supreme Court." *Evans v. Ga. Reg'l Hosp.*, 850 F.3d 1248, 1255 (11th Cir. 2017) (internal quotation and citation omitted).

Additionally, there is a longstanding uniform body of precedent holding that the government does not have to satisfy a mens rea requirement with respect to the status element of § 922. "The predecessor statutes to § 922(g)[]" that forbade felons to transport, receive, or possess firearms "contained no mens rea requirement," leading courts "interpreting these processor statutes [to] require[] . . . proof that the defendant knowingly received, transported, or possessed a firearm." *Langley*, 62 F.3d at 604 (internal quotation and citation omitted). "[B]ut, at the same time, [these decisions] recognized that the defendant's knowledge of the weapon's interstate nexus or of his felon status was irrelevant." *Id.* (internal quotation and citation omitted). True, in 1986, Congress amended § 924(a) to require "knowing" violations of § 922(g). *Id.*; *see also* Pub. L. No. 99–308, § 104(a), 100 Stat. 449, 456 (1986). But this codification did not compel a new interpretation. Although "a *significant change* in [statutory] language" ordinarily "is presumed to entail a change in meaning," ANTONIN SCALIA & BRYAN A. GARNER, *READING LAW: THE INTERPRETATION OF LEGAL TEXTS* 256 (2012) (emphasis added), the addition of a mens rea *identical* to that already imposed by courts does not suggest a change in meaning. Although defendants pointed to this change as evidence that the government must prove "that the defendant knew not only that he

12

possessed a firearm but that it had an interstate nexus and that he was a felon,"

*Dancy*, 861 F.2d at 81, courts routinely rejected these arguments, *See, e.g.*, *id.* at

81–82; *Langley*, 62 F.3d 604–06; *Jackson*, 120 F.3d 1226.  And no court of

appeals has required proof of the defendant's knowledge of his prohibited status

under any subsection of § 922(g).[3]

Moreover, despite ample opportunity to do so, Congress has never revisited

the issue.[4]  "The long time failure of Congress to alter [the law] after it had been

judicially construed, and the enactment by Congress of legislation which implicitly

recognizes the judicial construction as effective, is persuasive of legislative

recognition that the judicial construction is the correct one."  *Apex Hosiery Co. v.*

*Leader*, 310 U.S. 469, 488, 60 S. Ct. 982, 989 (1940); *see also Kimble v. Marvel*

---

[3] *See United States v. Smith*, 940 F.2d 710, 713-14 (1st Cir. 1991) (felony conviction, § 922(g)(1)); *United States v. Huet*, 665 F.3d 588, 596 (3d Cir. 2012) (same); *Langley*, 62 F.3d at 606 (same); *United States v. Butler*, 637 F.3d 519, 524-25 (5th Cir. 2011) (dishonorable discharge, § 922(g)(6)); *United States v. Olender*, 338 F.3d 629, 637 (6th Cir. 2003) (felony conviction, § 922(g)(1)); *United States v. Stein*, 712 F.3d 1038, 1041 (7th Cir. 2013) (misdemeanor domestic violence conviction, § 922(g)(9)); *United States v. Kind*, 194 F.3d 900, 907 (8th Cir. 1999) (felony conviction, § 922(g)(1)); *United States v. Kafka*, 222 F.3d 1129, 1131 (9th Cir. 2000) (domestic violence restraining order, § 922(g)(8)); *United States v. Games-Perez*, 667 F.3d 1136, 1140 (10th Cir. 2012)  (majority opinion) (felony conviction, § 922(g)(1)); *United States v. Bryant*, 523 F.3d 349, 354 (D.C. Cir. 2008) (same).

[4] As the Fourth Circuit explained in *Langley*, "[t]he predecessor statutes to § 922(g)(1) contained no mens rea requirement.  However, cases interpreting these predecessor statutes made clear that these statutes required proof of a mens rea element and were not strict liability offenses; that is, courts required proof that 'the defendant knowingly received, transported, or possessed a firearm,' but, at the same time, recognized that 'the defendant's knowledge of the weapon's interstate nexus or of his felon status was irrelevant.' " 62 F.3d at 604 (citing *Dancy*, 861 F.2d at 81).  We presume that when Congress enacted the Firearms Owners' Protection Act of 1986, establishing § 922(g), and its subsequent amendments, it was aware of this history.  *See White v. Mercury Marine, Div. of Brunswick, Inc.*, 129 F.3d 1428, 1434 (11th Cir. 1997) ("Congress is assumed to act with the knowledge of existing law and interpretations when it passes new legislation.").

13

*Entm't, LLC*, 135 S. Ct. 2401, 2409–10 (2015) ("All our interpretive decisions, in whatever way reasoned, effectively become part of the statutory scheme, subject (just like the rest) to congressional change.  Absent special justification, they are balls tossed into Congress's court, for acceptance or not as that branch elects. . . . Congress's continual reworking of the patent laws . . . further supports leaving the decision in place.").  Indeed, after appellate courts confirmed that the mens rea requirement of § 924 applied only to the possession element of offenses under § 922, Congress *expanded* the scope of § 922(g) without revisiting § 924(a)(2).  In 1996—after the decisions in *Dancy* and *Langley*—Congress extended the prohibition on firearm possession to individuals "who ha[ve] been convicted in any court of a misdemeanor crime of domestic violence."  Pub. L. No. 104–208, § 658, 110 Stat. 3009, 372 (1996) (codified at § 922(g)(9)).

Although it may seem that failing to require proof that the defendant had the requisite knowledge with respect to the status element is at odds with the traditional rule that the government must prove mens rea for each substantive element of the crime, upon closer inspection, even at common law and early American law, the government did not have the burden of proving that the defendant knew a specific fact or detail about himself.  Two examples illustrate this point:  statutory rape and bigamy.  In the instance of statutory rape, while there may be issues of proof with respect to the victim's age, the government does not

have to prove that the defendant knew he was the age of majority.  *See, e.g.*, *State v. Running*, 208 N.W. 231, 233–34 (N.D. 1926) (requiring that the government prove the defendant's age–but not that he knew his age–to establish the degree of statutory rape); *Hall v. State*, 58 N.W. 929, 930 (Neb. 1894) (requiring that an information charging statutory rape charge that the defendant was over 18, but not that he knew he was over 18).  Similarly, with respect to bigamy, the government does not have to prove that the defendant knew he was married.  *See* G.A. Endlich, *The Doctrine of Mens Rea*, 13 CRIM. L. MAG. 831, 841–42 (1891).  In short, even traditional crimes have never required the defendant's knowledge of the status element. [5]

That the Supreme Court has repeatedly underscored a "presumption in favor of a scienter requirement [for] . . . each of the statutory elements that criminalize otherwise innocent conduct," *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 72, 115 S. Ct 464, 469 (1994); *see also Torres*, 136 S. Ct. at 1630 ("In general, courts interpret criminal statutes to require that a defendant possess a mens rea, or guilty mind, as to every element of an offense."), does not change the conclusion that the government need not prove that the defendant knew *his own status*, even when this status is what brings the defendant within the ambit of a criminal law. Instead, precedents on this point require only that the government prove mens rea

---

[5] Of course, there could be a mistake of fact defense–but such defense is not alleged here.

15

for elements of an offense that concern the characteristics of *other people* and

*things*.  For example, in *Staples v. United States*, the Supreme Court explained that

the government could secure a conviction under a statute that forbade the

possession of automatic firearms only if it could prove that the defendant "knew"

that the gun he possessed was capable of automatic fire in addition to proving that

the defendant knowingly possessed the gun.  511 U.S. 600, 602–03, 619, 114 S. Ct.

1793, 1795–96 (1994).  In *X-Citement Video*, the Supreme Court interpreted a

statute that forbade the "knowing" transportation, receipt, or distribution of "visual

depiction[s] involv[ing] the use of a minor engaging in sexually explicit conduct"

to require the government to prove that the defendant knew that the depiction in

question featured a minor, and not just that the defendant knowingly possessed the

depiction.  513 U.S. at 68, 78, 115 S. Ct. at 467, 472 (internal quotation and

citation omitted).  In *Flores-Figueroa v. United States*, the Supreme Court

explained that a statute that forbade a person from "knowingly transfer[ing],

possess[ing], or us[ing] . . . *a means of identification of another person*" required

the government to prove that the defendant knew that the identification belonged to

another person, and not just that the defendant knowingly used the identification.

556 U.S. 646, 647, 129 S. Ct. 1886, 1888 (2009) (internal citation and quotation

omitted).  And in *Posters 'N' Things, Ltd. v. United States*, the Supreme Court

interpreted a statute that forbade the sale of drug paraphernalia to require the

16

government to prove that the defendant "knew that the items at issue [were] likely to be used with illegal drugs."  511 U.S. 513, 524, 114 S. Ct. 1747, 1753 (1994). But we are aware of no precedent that requires the government to prove that the defendant knew of his own status.  To the contrary, the Supreme Court has suggested that the "presumption of mens rea" for an element of an offense carries far less force when there is little "opportunity for reasonable mistake" about that element.  *X-Citement Video*, 513 U.S. at 72 n. 2, 115 S. Ct. at 469 n. 2.  A defendant's knowledge of his own status offers little room for "reasonable mistake."  *Id.*

> Finally, as the Fourth Circuit held in *Langley*,
>
> Our conclusion that Congress did not intend, through [Firearms Owners' Protection Act of 1986] to place the additional evidentiary burdens on the government suggested by Langley is supported by several other considerations.  First, it is highly unlikely that Congress intended to make it easier for felons to avoid prosecution by permitting them to claim that they were unaware of their felony status and/or the firearm's interstate nexus.  Second, in light of Congress' repeated efforts to fight violent crime and the commission of drug offenses, it is unlikely that Congress intended to make the application of the enhancement provision contained in § 924(e)(1) more difficult to apply.

*Id.* at 606 (footnote omitted).

Textual support, prior precedent, congressional acquiescence, and analogous common law all support the conclusion that there is no mens rea requirement with respect to the status element of § 922(g).  Therefore, we conclude that the district court did not err when it gave the jury instruction stating that "[t]he government is

17

not required to prove that the defendant knew that he was illegally or unlawfully in the United States."

### B. "Illegally or unlawfully"

While this court has never addressed at what point an alien becomes illegally or unlawfully in the United States for purposes of § 922(g)(5)(A), Rehaif's argument that an alien does not become illegal until he has been adjudicated as such by an USCIS official or an immigration judge fails for four reasons.

First, the district court's instruction– that "[a]n alien illegally or unlawfully in the United States is an alien whose presence within the United States is forbidden or not authorized by law"–is more consistent with the plain text of § 922(g)(5)(A). *See* Unlawful, Black's Law Dictionary (10th ed. 2014) (defining "unlawful" as "[n]ot authorized by law").

Second, as the Tenth Circuit explained in *United States v. Atandi*, "Congress has proven quite capable of demonstrating the circumstances in which it intended federal firearms disabilities to hinge upon the result of an adjudication."  376 F.3d 1186 (10th Cir. 2004).  Other § 922(g) subdivisions refer to, for example, a person "who is subject to a court order[ed]" restraining order, or to a person "who has been convicted in any court of a misdemeanor crime of domestic violence."  18 U.S.C. § 922(g)(8)–(9); *Atandi*, 376 F.3d at 1188.  If Congress had intended for § 922(g)(5)(A) to depend on a decisionmaker's adjudication, it would have so stated.

18

*Atandi*, 376 F.3d at 1188 (citing *Russello v. United States*, 464 U.S. 16, 23, 104 S. Ct. 296, 300 (1983)).

Third, the Immigration and Nationality Act's ("INA") definition of "unlawful" is consistent with the district court's instruction. The INA prohibits the admission of aliens who have been unlawfully present in the United States for certain periods of time. INA § 212(a)(9)(B)(i)(I), 8 U.S.C. § 1182(a)(9)(B)(i)(I). The INA states that "[f]or purposes of this paragraph, an alien is deemed to be unlawfully present in the United States if the alien is present in the United States *after the expiration of the period of stay authorized* by the Attorney General. . . ." INA § 212(a)(9)(B)(ii), 8 U.S.C. § 1182(a)(9)(B)(ii) (emphasis added). As such, a student admitted under an F-1 visa is unlawfully present if he remains in the United States after he is no longer enrolled as a full-time student. *See* 8 C.F.R. § 214.2(f)(5)(i) (defining duration of status as "the time during which an F-1 student is pursuing a full course of study at an educational institution approved by the [USCIS] for attendance by foreign students, or engaging in authorized practical training following completion of studies."); *see also* 27 C.F.R. § 478.11 (defining unlawful as "any alien . . . [w]ho is a nonimmigrant and whose authorized period of stay has expired or who has violated the terms of the nonimmigrant category in which he or she was admitted.").

19

Finally, the rule of lenity does not apply because § 922(g)(5)(A)'s plain text is not ambiguous. *See Johnson v. U.S.*, 529 U.S. 694, 713 n.13, 120 S. Ct. 1795, 1807 n.13 (2000) ("Lenity applies only when the equipoise of competing reasons cannot otherwise be resolved"). Furthermore, even if we found § 922(g)(5)(A) ambiguous, the ambiguity is resolved by the definition provided by 27 C.F.R. § 478.11, which was promulgated in 1997. *See* 62 Fed. Reg. 34,634, 34,639 (June 27, 1997). The rule of lenity is not applicable where a longstanding, unambiguous regulation gives potential offenders fair notice of what is proscribed. *See Babbitt v. Sweet Home Chapter of Cmtys. for a Greater Or.*, 515 U.S. 687, 704 n.18, 115 S. Ct. 2407, 2416 n.18 (1995).

Therefore, we conclude the district court did not err when it instructed the jury that "[a]n alien illegally or unlawfully in the United States is an alien whose presence within the United States is forbidden or not authorized by law."

## IV.    CONCLUSION

For the aforementioned reasons, we affirm Rehaif's convictions.

**AFFIRMED.**