(Slip Opinion) OCTOBER TERM, 2018 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## REHAIF *v.* UNITED STATES

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

No. 17–9560.   Argued April 23, 2019—Decided June 21, 2019

Petitioner Rehaif entered the United States on a nonimmigrant student visa to attend university but was dismissed for poor grades. He subsequently shot two firearms at a firing range. The Government prosecuted him under 18 U. S. C. §922(g), which makes it unlawful for certain persons, including aliens illegally in the country, to possess firearms, and §924(a)(2), which provides that anyone who "knowingly violates" the first provision can be imprisoned for up to 10 years. The jury at Rehaif's trial was instructed that the Government was not required to prove that he knew that he was unlawfully in the country. It returned a guilty verdict. The Eleventh Circuit affirmed.

*Held*: In a prosecution under §922(g) and §924(a)(2), the Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm. Pp. 3–12.

   (a) Whether a criminal statute requires the Government to prove that the defendant acted knowingly is a question of congressional intent. This inquiry starts from a longstanding presumption that Congress intends to require a defendant to possess a culpable mental state regarding "each of the statutory elements that criminalize otherwise innocent conduct," *United States* v. *X-Citement Video, Inc.*, 513 U. S. 64, 72, normally characterized as a presumption in favor of "scienter." There is no convincing reason to depart from this presumption here.

   The statutory text supports the presumption. It specifies that a defendant commits a crime if he "knowingly" violates §922(g), which makes possession of a firearm unlawful when the following elements are satisfied: (1) a status element (here "being an alien . . . illegally or unlawfully in the United States"); (2) a possession element (to "pos-

sess"); (3) a jurisdictional element ("in or affecting commerce"); and (4) a firearm element (a "firearm or ammunition"). Aside from the jurisdictional element, which is not subject to the presumption in favor of scienter, §922(g)'s text simply lists the elements that make a defendant's behavior criminal. The term "knowingly" is normally read "as applying to all the subsequently listed elements of the crime." *Flores-Figueroa* v. *United States*, 556 U. S. 646, 650. And the "knowingly" requirement clearly applies to §922(g)'s possession element, which follows the status element in the statutory text. There is no basis for interpreting "knowingly" as applying to the second §922(g) element but not the first.

This reading of the statute is also consistent with a basic principle underlying the criminal law: the importance of showing what Blackstone called "a vicious will." Scienter requirements advance this principle by helping to separate wrongful from innocent acts. That is the case here. Possessing a gun can be entirely innocent. It is the defendant's *status*, not his conduct alone, that makes the difference. Without knowledge of that status, a defendant may lack the intent needed to make his behavior wrongful. Pp. 3–7.

(b) The Government's arguments to the contrary are unpersuasive. In claiming that Congress does not normally require defendants to know their own status, it points to statutes where the defendant's status is the "crucial element" separating innocent from wrongful conduct. *X-Citement Video*, *supra,* at 73. Those statutes are quite different from the provisions at issue here, where the defendant's status separates innocent from wrongful conduct. The Government also argues that whether an alien is "illegally or unlawfully in the United States" is a question of law, not fact, and thus appeals to the maxim that "ignorance of the law" is no excuse. But that maxim normally applies where a defendant possesses the requisite mental state in respect to the elements of the crime but claims to be unaware of a law forbidding his conduct. That maxim does not normally apply where a defendant's mistaken impression about a collateral legal question causes him to misunderstand his conduct's significance, thereby negating an element of the offense. Rehaif's status as an alien "illegally or unlawfully in the United States" refers to what commentators call a "collateral" question of law, and a mistake regarding that status negates an element of the offense. Finally, the statutory and legislative history on which the Government relies is at best inclusive. Pp. 7–11.

888 F. 3d 1138, reversed and remanded.

BREYER, J., delivered the opinion of the Court, in which ROBERTS, C. J., and GINSBURG, SOTOMAYOR, KAGAN, GORSUCH, and KAVANAUGH,

Syllabus

JJ., joined. ALITO, J., filed a dissenting opinion, in which THOMAS, J., joined.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

_____

No. 17–9560

_____

## HAMID MOHAMED AHMED ALI REHAIF, PETITIONER *v.* UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

[June 21, 2019]

JUSTICE BREYER delivered the opinion of the Court.

A federal statute, 18 U. S. C. §922(g), provides that "[i]t shall be unlawful" for certain individuals to possess firearms. The provision lists nine categories of individuals subject to the prohibition, including felons and aliens who are "illegally or unlawfully in the United States." *Ibid.* A separate provision, §924(a)(2), adds that anyone who "*knowingly* violates" the first provision shall be fined or imprisoned for up to 10 years. (Emphasis added.)

The question here concerns the scope of the word "knowingly." Does it mean that the Government must prove that a defendant knew both that he engaged in the relevant conduct (that he possessed a firearm) and also that he fell within the relevant status (that he was a felon, an alien unlawfully in this country, or the like)? We hold that the word "knowingly" applies both to the defendant's conduct and to the defendant's status. To convict a defendant, the Government therefore must show that the defendant knew he possessed a firearm and also that he knew he had the relevant status when he possessed it.

## I

Petitioner Hamid Rehaif entered the United States on a nonimmigrant student visa to attend university. After he received poor grades, the university dismissed him and told him that his "'immigration status'" would be terminated unless he transferred to a different university or left the country. App. to Pet. for Cert. 3a. Rehaif did neither.

Rehaif subsequently visited a firing range, where he shot two firearms. The Government learned about his target practice and prosecuted him for possessing firearms as an alien unlawfully in the United States, in violation of §922(g) and §924(a)(2). At the close of Rehaif's trial, the judge instructed the jury (over Rehaif's objection) that the "United States is not required to prove" that Rehaif "knew that he was illegally or unlawfully in the United States." App. to Pet. for Cert. 4a (internal quotation marks omitted). The jury returned a guilty verdict, and Rehaif was sentenced to 18 months' imprisonment.

Rehaif appealed. He argued that the judge erred in instructing the jury that it did not need to find that he knew he was in the country unlawfully. The Court of Appeals for the Eleventh Circuit, however, concluded that the jury instruction was correct, and it affirmed Rehaif's conviction. See 888 F. 3d 1138, 1148 (2018). The Court of Appeals believed that the criminal law generally does not require a defendant to know his own status, and further observed that no court of appeals had required the Government to establish a defendant's knowledge of his status in the analogous context of felon-in-possession prosecutions. *Id.*, at 1145–1146.

We granted certiorari to consider whether, in prosecutions under §922(g) and §924(a)(2), the Government must prove that a defendant knows of his status as a person barred from possessing a firearm. We now reverse.

II

Whether a criminal statute requires the Government to prove that the defendant acted knowingly is a question of congressional intent. See *Staples* v. *United States*, 511 U. S. 600, 605 (1994). In determining Congress' intent, we start from a longstanding presumption, traceable to the common law, that Congress intends to require a defendant to possess a culpable mental state regarding "each of the statutory elements that criminalize otherwise innocent conduct." *United States* v. *X-Citement Video, Inc.*, 513 U. S. 64, 72 (1994); see also *Morissette* v. *United States*, 342 U. S. 246, 256–258 (1952). We normally characterize this interpretive maxim as a presumption in favor of "scienter," by which we mean a presumption that criminal statutes require the degree of knowledge sufficient to "mak[e] a person legally responsible for the consequences of his or her act or omission." Black's Law Dictionary 1547 (10th ed. 2014).

We apply the presumption in favor of scienter even when Congress does not specify any scienter in the statutory text. See *Staples*, 511 U. S., at 606. But the presumption applies with equal or greater force when Congress includes a general scienter provision in the statute itself. See ALI, Model Penal Code §2.02(4), p. 22 (1985) (when a statute "prescribes the kind of culpability that is sufficient for the commission of an offense, without distinguishing among the material elements thereof, such provision shall apply to all the material elements of the offense, unless a contrary purpose plainly appears").

A

Here we can find no convincing reason to depart from the ordinary presumption in favor of scienter. The statutory text supports the presumption. The text of §924(a)(2) says that "[w]hoever knowingly violates" certain subsections of §922, including §922(g), "shall be" subject to penal-

ties of up to 10 years' imprisonment. The text of §922(g) in turn provides that it "shall be unlawful for any person . . . , being an alien . . . illegally or unlawfully in the United States," to "possess in or affecting commerce, any firearm or ammunition."

The term "knowingly" in §924(a)(2) modifies the verb "violates" and its direct object, which in this case is §922(g). The proper interpretation of the statute thus turns on what it means for a defendant to know that he has "violate[d]" §922(g). With some here-irrelevant omissions, §922(g) makes possession of a firearm or ammunition unlawful when the following elements are satisfied: (1) a status element (in this case, "being an alien . . . illegally or unlawfully in the United States"); (2) a possession element (to "possess"); (3) a jurisdictional element ("in or affecting commerce"); and (4) a firearm element (a "firearm or ammunition").

No one here claims that the word "knowingly" modifies the statute's jurisdictional element. Jurisdictional elements do not describe the "evil Congress seeks to prevent," but instead simply ensure that the Federal Government has the constitutional authority to regulate the defendant's conduct (normally, as here, through its Commerce Clause power). *Luna Torres* v. *Lynch*, 578 U. S. ___, ___– ___ (2016) (slip op., at 15–16). Because jurisdictional elements normally have nothing to do with the wrongfulness of the defendant's conduct, such elements are not subject to the presumption in favor of scienter. See *id.,* at ___ (slip op., at 16).

Jurisdictional element aside, however, the text of §922(g) simply lists the elements that make a defendant's behavior criminal. As "a matter of ordinary English grammar," we normally read the statutory term "'knowingly' as applying to all the subsequently listed elements of the crime." *Flores-Figueroa* v. *United States*, 556 U. S. 646, 650 (2009); see also *id.,* at 652 (we "ordinarily read a

phrase in a criminal statute that introduces the elements of a crime with the word 'knowingly' as applying that word to each element"). This is notably not a case where the modifier "knowingly" introduces a long statutory phrase, such that questions may reasonably arise about how far into the statute the modifier extends. See *id.,* at 659 (ALITO, J., concurring in part). And everyone agrees that the word "knowingly" applies to §922(g)'s possession element, which is situated after the status element. We see no basis to interpret "knowingly" as applying to the second §922(g) element but not the first. See *United States* v. *Games-Perez*, 667 F. 3d 1136, 1143 (CA10 2012) (Gorsuch, J., concurring). To the contrary, we think that by specifying that a defendant may be convicted only if he "knowingly violates" §922(g), Congress intended to require the Government to establish that the defendant knew he violated the material elements of §922(g).

B

Beyond the text, our reading of §922(g) and §924(a)(2) is consistent with a basic principle that underlies the criminal law, namely, the importance of showing what Blackstone called "a vicious will." 4 W. Blackstone, Commentaries on the Laws of England 21 (1769). As this Court has explained, the understanding that an injury is criminal only if inflicted knowingly "is as universal and persistent in mature systems of law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil." *Morissette*, 342 U. S., at 250. Scienter requirements advance this basic principle of criminal law by helping to "separate those who understand the wrongful nature of their act from those who do not." *X-Citement Video*, 513 U. S., at 72–73, n. 3.

The cases in which we have emphasized scienter's importance in separating wrongful from innocent acts are

legion.   See, *e.g.*, *id.*, at 70; *Staples*, 511 U. S., at 610; *Liparota* v. *United States*, 471 U. S. 419, 425 (1985); *United States* v. *Bailey*, 444 U. S. 394, 406, n. 6 (1980); *United States* v. *United States Gypsum Co.*, 438 U. S. 422, 436 (1978); *Morissette*, 342 U. S., at 250–251.   We have inter-preted statutes to include a scienter requirement even where the statutory text is silent on the question.   See *Staples*, 511 U. S., at 605.   And we have interpreted stat-utes to include a scienter requirement even where "the most grammatical reading of the statute" does not support one. *X-Citement Video*, 513 U. S., at 70.

Applying the word "knowingly" to the defendant's status in §922(g) helps advance the purpose of scienter, for it helps to separate wrongful from innocent acts.   Assuming compliance with ordinary licensing requirements, the possession of a gun can be entirely innocent.   See *Staples*, 511 U. S., at 611.   It is therefore the defendant's *status*, and not his conduct alone, that makes the difference. Without knowledge of that status, the defendant may well lack the intent needed to make his behavior wrongful.   His behavior may instead be an innocent mistake to which criminal sanctions normally do not attach.   Cf. O. Holmes, The Common Law 3 (1881) ("even a dog distinguishes between being stumbled over and being kicked").

We have sometimes declined to read a scienter require-ment into criminal statutes.   See *United States* v. *Balint*, 258 U. S. 250, 254 (1922).   But we have typically declined to apply the presumption in favor of scienter in cases involving statutory provisions that form part of a "regula-tory" or "public welfare" program and carry only minor penalties.   See *Staples*, 511 U. S., at 606; *Morissette*, 342 U. S., at 255–259.   The firearms provisions before us are not part of a regulatory or public welfare program, and they carry a potential penalty of 10 years in prison that we have previously described as "harsh."   *X-Citement Video*, 513 U. S., at 72.   Hence, this exception to the presumption

in favor of scienter does not apply.

## III

The Government's arguments to the contrary do not convince us that Congress sought to depart from the normal presumption in favor of scienter.

The Government argues that Congress does not normally require defendants to know their own status. But the Government supports this claim primarily by referring to statutes that differ significantly from the provisions at issue here. One of these statutes prohibits "an officer, employee, contractor, or consultant of the United States" from misappropriating classified information. 18 U. S. C. §1924(a). Another statute applies to anyone "at least eighteen years of age" who solicits a minor to help avoid detection for certain federal crimes. 21 U. S. C. §861(a)(2). A third applies to a "parent [or] legal guardian" who allows his child to be used for child pornography. 18 U. S. C. §2251(b).

We need not decide whether we agree or disagree with the Government's interpretation of these statutes. In the provisions at issue here, the defendant's status is the "crucial element" separating innocent from wrongful conduct. *X-Citement Video*, 513 U. S., at 73. But in the statutes cited by the Government, the conduct prohibited— misappropriating classified information, seeking to evade detection for certain federal crimes, and facilitating child pornography—would be wrongful irrespective of the defendant's status. This difference assures us that the presumption in favor of scienter applies here even assuming the Government is right that these other statutes do not require knowledge of status.

Nor do we believe that Congress would have expected defendants under §922(g) and §924(a)(2) to know their own statuses. If the provisions before us were construed to require no knowledge of status, they might well apply to

an alien who was brought into the United States unlawfully as a small child and was therefore unaware of his unlawful status. Or these provisions might apply to a person who was convicted of a prior crime but sentenced only to probation, who does not know that the crime is "*punishable* by imprisonment for a term exceeding one year." §922(g)(1) (emphasis added); see also *Games-Perez*, 667 F. 3d, at 1138 (defendant held strictly liable regarding his status as a felon even though the trial judge had told him repeatedly—but incorrectly—that he would "leave this courtroom not convicted of a felony"). As we have said, we normally presume that Congress did not intend to impose criminal liability on persons who, due to lack of knowledge, did not have a wrongful mental state. And we doubt that the obligation to prove a defendant's knowledge of his status will be as burdensome as the Government suggests. See *Staples*, 511 U. S., at 615, n. 11 ("knowledge can be inferred from circumstantial evidence").

The Government also argues that whether an alien is "illegally or unlawfully in the United States" is a question of law, not fact, and thus appeals to the well-known maxim that "ignorance of the law" (or a "mistake of law") is no excuse. *Cheek* v. *United States*, 498 U. S. 192, 199 (1991).

This maxim, however, normally applies where a defendant has the requisite mental state in respect to the elements of the crime but claims to be "unaware of the existence of a statute proscribing his conduct." 1 W. LaFave & A. Scott, Substantive Criminal Law §5.1(a), p. 575 (1986). In contrast, the maxim does not normally apply where a defendant "has a mistaken impression concerning the legal effect of some collateral matter and that mistake results in his misunderstanding the full significance of his conduct," thereby negating an element of the offense. *Ibid.*; see also Model Penal Code §2.04, at 27 (a mistake of law is a defense if the mistake negates the "knowledge . . . required to establish a material element of the offense").

Much of the confusion surrounding the ignorance-of-the-law maxim stems from "the failure to distinguish [these] two quite different situations." LaFave, Substantive Criminal Law §5.1(d), at 585.

We applied this distinction in *Liparota*, where we considered a statute that imposed criminal liability on "whoever knowingly uses, transfers, acquires, alters, or possesses" food stamps "in any manner not authorized by the statute or the regulations." 471 U. S., at 420 (quotation altered). We held that the statute required scienter not only in respect to the defendant's use of food stamps, but also in respect to whether the food stamps were used in a "manner not authorized by the statute or regulations." *Id.,* at 425, n. 9. We therefore required the Government to prove that the defendant knew that his use of food stamps was unlawful—even though that was a question of law. See *ibid.*

This case is similar. The defendant's status as an alien "illegally or unlawfully in the United States" refers to a legal matter, but this legal matter is what the commentators refer to as a "collateral" question of law. A defendant who does not know that he is an alien "illegally or unlawfully in the United States" does not have the guilty state of mind that the statute's language and purposes require.

The Government finally turns for support to the statutory and legislative history. Congress first enacted a criminal statute prohibiting particular categories of persons from possessing firearms in 1938. See Federal Firearms Act, 52 Stat. 1250. In 1968, Congress added new categories of persons subject to the prohibition. See Omnibus Crime Control and Safe Streets Act, 82 Stat. 197. Then, in 1986, Congress passed the statute at issue here, the Firearms Owners' Protection Act, 100 Stat. 449, note following 18 U. S. C. §921, which reorganized the prohibition on firearm possession and added the language providing that only those who violate the prohibition "knowingly" may be

held criminally liable.

The Government says that, prior to 1986, the courts had reached a consensus that the law did not require the Government to prove scienter regarding a defendant's status. And the Government relies on the interpretive canon providing that when particular statutory language has received a settled judicial construction, and Congress subsequently reenacts that "same language," courts should presume that Congress intended to ratify the judicial consensus. *Helsinn Healthcare S. A.* v. *Teva Pharmaceuticals USA, Inc.*, 586 U. S. ___, ___ (2019) (slip op., at 7).

Prior to 1986, however, there was no definitive judicial consensus that knowledge of status was not needed. This Court had not considered the matter. As the Government says, most lower courts had concluded that the statute did not require knowledge of status. See, *e.g.*, *United States* v. *Pruner*, 606 F. 2d 871, 874 (CA9 1979). But the Sixth Circuit had held to the contrary, specifically citing the risk that a defendant "may not be aware of the fact" that barred him from possessing a firearm. *United States* v. *Renner*, 496 F. 2d 922, 926 (1974). And the Fourth Circuit had found that knowledge of a defendant's status was not needed because the statute "[b]y its terms" did not require knowledge of status. *United States* v. *Williams*, 588 F. 2d 92 (1978) (*per curiam*).

This last-mentioned circumstance is important. Any pre-1986 consensus involved the statute as it read prior to 1986—without any explicit scienter provision. But Congress in 1986 added a provision clarifying that a defendant could be convicted only if he violated the prohibition on firearm possession "knowingly." This addition, which would serve no apparent purpose under the Government's view, makes it all but impossible to draw any inference that Congress intended to ratify a pre-existing consensus when, in 1986, it amended the statute.

The Government points to the House Report on the legislation, which says that the 1986 statute would require the Government to prove "that the defendant's *conduct* was knowing." H. R. Rep. No. 99–495, p. 10 (1986) (emphasis added). Although this statement speaks of "conduct" rather than "status," context suggests that the Report may have meant the former to include the latter. In any event, other statements suggest that the word "knowingly" was intended to apply to both conduct and status. The Senate Report, for example, says that the proposed amendments sought to exclude "individuals who lack all criminal intent and knowledge," without distinguishing between conduct and status. S. Rep. No. 97–476, p. 15 (1982). And one Senate sponsor of the bill pointed out that the absence of a scienter requirement in the prior statutes had resulted in "severe penalties for unintentional missteps." 132 Cong. Rec. 9590 (1986) (statement of Sen. Hatch).

Thus, assuming without deciding that statutory or legislative history could overcome the longstanding presumption in favor of scienter, that history here is at best inconclusive.

\*   \*   \*

The Government asks us to hold that any error in the jury instructions in this case was harmless. But the lower courts did not address that question. We therefore leave the question for those courts to decide on remand. See *Thacker* v. *TVA*, 587 U. S. \_\_\_, \_\_\_ (2019) (slip op., at 10) (citing *Cutter* v. *Wilkinson*, 544 U. S. 709, 718, n. 7 (2005)).

We conclude that in a prosecution under 18 U. S. C. §922(g) and §924(a)(2), the Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm. We express no view, however, about what precisely the Government must

prove to establish a defendant's knowledge of status in respect to other §922(g) provisions not at issue here. See *post*, at 13–15 (ALITO, J., dissenting) (discussing other statuses listed in §922(g) not at issue here). We accordingly reverse the judgment of the Court of Appeals and remand the case for further proceedings consistent with this opinion.

*It is so ordered.*

## APPENDIX

18 U. S. C. §924(a)(2)

"Whoever knowingly violates subsection (a)(6), (d), (g), (h), (i), (j), or (o) of section 922 shall be fined as provided in this title, imprisoned not more than 10 years, or both."

18 U. S. C. §922(g)

"It shall be unlawful for any person—

"(1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;

"(2) who is a fugitive from justice;

"(3) who is an unlawful user of or addicted to any controlled substance . . . ;

"(4) who has been adjudicated as a mental defective or who has been committed to a mental institution;

"(5) who, being an alien—(A) is illegally or unlawfully in the United States; or (B) . . . has been admitted to the United States under a nonimmigrant visa (as that term is defined in section 101(a)(26) of the Immigration and Nationality Act (8 U.S.C. 1101(a)(26)));

"(6) who has been discharged from the Armed Forces under dishonorable conditions;

"(7) who, having been a citizen of the United States, has renounced his citizenship;

"(8) who is subject to a court order that—(A) was issued after a hearing of which such person received actual notice, and at which such person had an opportunity to participate; (B) restrains such person from harassing, stalking, or threatening an intimate partner of such person or child of such intimate partner or person, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child; and (C)(i) includes a finding that such person represents a credible threat to the physical safety of such intimate

partner or child; or (ii) by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury; or

"(9) who has been convicted in any court of a misdemeanor crime of domestic violence,

to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."

# SUPREME COURT OF THE UNITED STATES

————

No. 17–9560

————

## HAMID MOHAMED AHMED ALI REHAIF, PETITIONER *v.* UNITED STATES

### ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

[June 21, 2019]

JUSTICE ALITO, with whom JUSTICE THOMAS joins, dissenting.

The Court casually overturns the long-established interpretation of an important criminal statute, 18 U. S. C. §922(g), an interpretation that has been adopted by every single Court of Appeals to address the question. That interpretation has been used in thousands of cases for more than 30 years. According to the majority, every one of those cases was flawed. So today's decision is no minor matter. And §922(g) is no minor provision. It probably does more to combat gun violence than any other federal law. It prohibits the possession of firearms by, among others, convicted felons, mentally ill persons found by a court to present a danger to the community, stalkers, harassers, perpetrators of domestic violence, and illegal aliens.

Today's decision will make it significantly harder to convict persons falling into some of these categories, and the decision will create a mountain of problems with respect to the thousands of prisoners currently serving terms for §922(g) convictions. Applications for relief by federal prisoners sentenced under §922(g) will swamp the lower courts. A great many convictions will be subject to challenge, threatening the release or retrial of dangerous individuals whose cases fall outside the bounds of

harmless-error review.  See *ante,* at 11.

If today's decision were compelled by the text of §922(g) or by some other clear indication of congressional intent, what the majority has done would be understandable.  We must enforce the laws enacted by Congress even if we think that doing so will bring about unfortunate results.  But that is not the situation in this case.  There is no sound basis for today's decision.  Indeed, there was no good reason for us to take this case in the first place.  No conflict existed in the decisions of the lower courts, and there is no evidence that the established interpretation of §922(g) had worked any serious injustice.

The push for us to grant review was based on the superficially appealing but ultimately fallacious argument that the text of §922(g) dictates the interpretation that the majority now reaches.  See Pet. for Cert. 8.  Ironically, today's decision, while casting aside the established interpretation of §922(g), does not claim that the text of that provision is itself dispositive.  Instead, what the majority relies on, in the end, is its own guess about *congressional intent*.  And the intent that the majority attributes to Congress is one that Congress almost certainly did not harbor.

I

The majority provides a bowdlerized version of the facts of this case and thus obscures the triviality of this petitioner's claim.  The majority wants readers to have in mind an entirely imaginary case, a heartless prosecution of "an alien who was brought into the United States unlawfully as a small child and was therefore unaware of his unlawful status."  *Ante*, at 8.  Such a defendant would indeed warrant sympathy, but that is not petitioner, and no one has called to our attention any real case like the one the majority conjures up.

Here is what really happened.  Petitioner, a citizen of

the United Arab Emirates, entered this country on a visa that allowed him to stay here lawfully only so long as he remained a full-time student. 888 F. 3d 1138, 1140 (CA11 2018). He enrolled at the Florida Institute of Technology, but he withdrew from or failed all of his classes and was dismissed. Brief for Petitioner 4–5. After he was conditionally readmitted, he failed all but one of his courses. His enrollment was then terminated, and he did not appeal. The school sent him e-mails informing him that he was no longer enrolled and that, unless he was admitted elsewhere, his status as a lawful alien would be terminated. 888 F. 3d, at 1140–1141. Petitioner's response was to move to a hotel and frequent a firing range. Each evening he checked into the hotel and always demanded a room on the eighth floor facing the airport. Each morning he checked out and paid his bill with cash, spending a total of more than $11,000. This went on for 53 days. Brief for United States 4. A hotel employee told the FBI that petitioner claimed to have weapons in his room. Arrested and charged under §922(g) for possession of a firearm by an illegal alien, petitioner claimed at trial that the Government had to prove beyond a reasonable doubt that he actually knew that his lawful status had been terminated. Following what was then the universal and long-established interpretation of §922(g), the District Court rejected this argument, and a jury found him guilty. 888 F. 3d, at 1141. The Eleventh Circuit affirmed. *Id.,* at 1140. Out of the more than 8,000 petitions for a writ of certiorari that we expected to receive this Term, we chose to grant this one to see if petitioner had been deprived of the right to have a jury decide whether, in his heart of hearts, he really knew that he could not lawfully remain in the United States on a student visa when he most certainly was no longer a student.

# II

# A

Petitioner claims that the texts of §922(g) and a companion provision, 18 U. S. C. §924(a)(2), dictate a decision in his favor, and I therefore begin with the text of those two provisions. Section 924(a)(2) provides in relevant part as follows:

> "Whoever *knowingly* violates subsection . . . (g) of section 922 shall be fined as provided in this title, imprisoned for not more than 10 years, or both." (Emphasis added.)

Section 922(g), in turn, makes it unlawful for nine categories of persons to engage in certain interstate-commerce-related conduct involving firearms. These categories consist of: (1) convicted felons; (2) fugitives from justice; (3) users of illegal drugs or addicts; (4) persons found to have very serious mental problems; (5) illegal aliens; (6) individuals who were dishonorably discharged from the Armed Forces; (7) persons who renounced U. S. citizenship; (8) stalkers, harassers, and abusers subject to restraining orders; and (9) persons convicted of a misdemeanor crime of domestic violence.[1] Persons falling into

---

[1] Title 18 U. S. C. §922(g) provides as follows:

"It shall be unlawful for any person—

"(1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;

"(2) who is a fugitive from justice;

"(3) who is an unlawful user of or addicted to any controlled substance (as defined in section 102 of the Controlled Substances Act (21 U. S. C. §802));

"(4) who has been adjudicated as a mental defective or who has been committed to a mental institution;

"(5) who, being an alien—

"(A) is illegally or unlawfully in the United States; or

"(B) except as provided in subsection (y)(2), has been admitted to the United States under a nonimmigrant visa (as that term is defined in

these categories are forbidden, as relevant here, to "possess in or affecting commerce, any firearm."

Petitioner argues that, when §924(a)(2) and §922(g) are put together, they unambiguously show that a defendant must actually know that he falls into one of the nine enumerated categories. But this purportedly textual argument requires some moves that cannot be justified on the basis of the statutory text. Petitioner's argument tries to hide those moves in the manner of a sleight-of-hand artist at a carnival.

Petitioner begins by extracting the term "knowingly" from §924(a)(2). He then transplants it into the beginning of §922(g), ignores the extraordinarily awkward prose that this surgery produces, and proclaims that because "knowingly" appears at the beginning of the enumeration of the

—————

section 101(a)(26) of the Immigration and Nationality Act (8 U. S. C. §1101(a)(26)));

    "(6) who has been discharged from the Armed Forces under dishonorable conditions;

    "(7) who, having been a citizen of the United States, has renounced his citizenship;

    "(8) who is subject to a court order that—

    "(A) was issued after a hearing of which such person received actual notice, and at which such person had an opportunity to participate;

    "(B) restrains such person from harassing, stalking, or threatening an intimate partner of such person or child of such intimate partner or person, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child; and

    "(C)(i) includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child; or

    "(ii) by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury; or

    "(9) who has been convicted in any court of a misdemeanor crime of domestic violence,

    "to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."

elements of the §922(g) offense, we must assume that it modifies the first of those elements, *i.e.*, being a convicted felon, illegal alien, etc.  To conclude otherwise, he contends, is to commit the sin of having the term "knowingly" leap over that element and then land conveniently in front of the second.  Pet. for Cert. 8.

But petitioner's reading is guilty of the very sort of leaping that it condemns—and then some.  It has "knowingly" performed a jump of Olympian proportions, taking off from §924(a)(2), sailing backward over more than 9,000 words in the U. S. Code, and then landing—conveniently— at the beginning of the enumeration of the elements of the §922(g) offense.  Of course, there is no logical reason why this jump has to land at that particular point in §922(g).  That is petitioner's first sleight of hand.  But there is another.

What petitioner and those who have pressed this leaping argument want §922(g) to say is essentially this: Whoever knowingly is an illegal alien and possesses a firearm shall be fined and/or imprisoned if his possession of the gun was in or affecting interstate commerce.  If we had before us a provision that reads like that, there would be a strong textual argument that a defendant's status as an illegal alien must actually be known to him.  That is essentially what we held in *Flores-Figueroa* v. *United States*, 556 U. S. 646, 652 (2009).  But when the term "knowingly" is excised from §924(a)(2) and inserted at the beginning of §922(g), what we get is something quite different:

> **Whoever knowingly** . . . It is unlawful for any person . . . who, being an alien—is illegally or unlawfully in the United States . . . to possess in or affecting commerce, any firearm or ammunition . . . .

Congress did not—and certainly would not—enact a statute that reads like that.  To convert this garbled conglomeration into intelligible prose, editing is obviously

needed, and the editing process would compel the editor to make decisions with substantive implications that could hardly go unnoticed.  Here is a way of amalgamating §924(a)(1) and §922(g) that minimizes the changes in the language of the two provisions:

> **Whoever knowingly** . . . ~~It is unlawful for any person . . . who,~~ being an alien—is illegally or unlawfully in the United States . . . **and** possess**es** in or affecting commerce, any firearm or ammunition . . . [commits a crime punishable by . . . .]

The most natural reading of this version is that the defendant must know only that he is an alien, not that his presence in the country is illegal or unlawful.  And under this version, it is not even clear that the alien's possession of the firearm or ammunition must be knowing—even though everyone agrees that this is required.

Here are two other possibilities that require more changes.  The first is this:

> **Whoever knowingly** . . . ~~It is unlawful for any person . . . who,~~ being an alien **who**—is illegally or unlawfully in the United States . . . ~~to~~ possess**es** in or affecting commerce, any firearm or ammunition . . . [commits a crime punishable by . . . .]

The second, which differs from the first only in that the clause "who is illegally or unlawfully in the United States" is set off by commas, is this:

> **Whoever knowingly** . . . ~~It is unlawful for any person . . . who,~~ being an alien**, who**—is illegally or unlawfully in the United States**,** . . . ~~to~~ possess**es** in or affecting commerce, any firearm or ammunition . . . [commits a crime punishable by . . . .]

A strict grammarian, noting that the clause "who is legally or unlawfully in the United States" is restrictive in the

first of these versions and nonrestrictive in the second,
might interpret the first to favor petitioner and the second
to favor the Government.  And under both of these ver-
sions, it is again unclear whether a defendant's possession
of the firearm or ammunition must be knowing.

All of the versions discussed so far place the term
"knowingly" at the beginning of our transformed version of
§922(g), but as noted, there is no reason why this term's
leap from §924(a)(2) must land at that point.  So our new
version of §922(g) could just as logically read like this:

> **Whoever** . . . ~~It is unlawful for any person . . . who,~~
> being an alien **who**—is illegally or unlawfully in the
> United States . . . ~~to~~ **knowingly** possess**es** in or af-
> fecting commerce, any firearm or ammunition . . .
> [commits a crime punishable by . . . .]

That would make it clear that the long-established inter-
pretation of §922(g) is correct.

What these possibilities show is that any attempt to
combine the relevant language from §924(a)(2) with the
language of §922(g) necessarily entails significant choices
that are not dictated by the text of those provisions.   So
the purportedly textualist argument that we were sold at
the certiorari stage comes down to this: If §§922(g) and
924(a)(2) are arbitrarily combined in the way that peti-
tioner prefers, then, presto chango, they support petition-
er's interpretation.  What a magic trick!

## B

The truth behind the illusion is that the terms used in
§§924(a)(2) and 922(g), when read in accordance with their
use in ordinary speech, can easily be interpreted to treat
the question of *mens rea* in at least four different ways.

*First*, the language of §§924(a)(2) and 922(g) can be read
to require that a defendant know that his conduct is a
violation of §922(g).  In ordinary speech, to knowingly

violate a rule may mean to violate a known rule. ("He was told it is forbidden to smoke in the restroom of a plane, but he knowingly did so.")  Neither petitioner nor the Government suggests that this is the proper interpretation of §§922(g) and 924(a)(2), but their reason is not based on the plain or ordinary meaning of the statutory text.  Instead, it rests on an inference about congressional intent that, in turn, is based on a drafting convention, namely, that where Congress wants to require proof that a criminal defendant knew his conduct was illegal, it specifies that the violation must be "willful."  In ordinary speech, "willfulness" does not require or even suggest knowledge of illegality.  See Webster's Third New International Dictionary 2617 (1976).  But we have construed the term as used in statutes to mean the "intentional violation of a known legal duty." *United States* v. *Bishop*, 412 U. S. 346, 360 (1973).  Thus, the pointed use of the term "knowingly," as opposed to "willfully," in §922(g), provides a ground to infer that Congress did not mean to require knowledge of illegality.

*Second*, a "knowing" violation could require knowledge of *every* element that makes up the offense.  As applied to §922(g), that would mean that the Government would have to prove that the defendant: (1) knew that he is an alien "illegally or unlawfully in the United States," (2) knew that the thing he "possess[ed]" was "a firearm or ammunition," and (3) knew that what he did was "in or affecting commerce."  But again, the parties (and the majority) disclaim this reading because, they contend, the *mens rea* requirement does not apply to the interstate-commerce element of the offense.  To reach this conclusion, however, neither the parties nor the majority relies on the text.  How could they?  If positioning the term "knowingly" at the beginning of a list of elements (or incorporating it through a separate provision) means that it applies to every element, then it would have to apply to

the interstate-commerce element just like the others.

Once again, the conclusion that "knowingly" does not apply to the interstate-commerce element is not based on any rule of English usage but on yet another inference about congressional intent: that the question whether a defendant knew that his act of possessing a gun or ammunition was "in or affecting commerce" is simply not the sort of question that Congress wanted a jury to decide. The conclusion is sound, see, *e.g.*, *Luna Torres* v. *Lynch*, 578 U. S. ___, ___ (2016) (slip op., at 15). But the inference that this is not what Congress intended is in no way compelled by the text of §922(g), which simply includes the jurisdictional element among the other elements of the crime with no textual indication that Congress meant for it to be treated differently.[2]

*Third*, a "knowing" violation could require knowledge of both the conduct and status elements of the offense (but not the jurisdictional element). This is the reading that petitioner advocates and that the majority adopts. Yet again, this interpretation is not based on the text of the provisions but on two other factors: the inference about congressional intent just discussed and the assumption that Congress, had it incorporated the term "knowingly" into §922(g), would have placed it at the beginning of that provision. As I have explained, there is no textual basis for that assumption.

*Fourth*, a "knowing" violation could require knowledge of the conduct element—the possession of a firearm or ammunition—but not the others. Putting aside the ques-

––––––––––

  [2] Indeed, the jurisdictional element is listed before the firearm element of the offense, to which everyone agrees the *mens rea* requirement applies. The text alone does not explain why the word "knowingly" would "leapfro[g]" over the middle element, which is perhaps why the majority does not adopt the novel "grammatical gravity" canon. *United States* v. *Games-Perez*, 667 F. 3d 1136, 1143 (CA10 2012) (Gorsuch, J., concurring); see also Tr. of Oral Arg. 32.

tion of the jurisdictional element, that is how one would naturally read §922(g) if Congress had incorporated the knowledge requirement into §922(g) *after* the status element and *just before* the conduct element. Of course, Congress did not do that—but neither did it place "knowingly" at the beginning of the list of elements.

As these competing alternatives show, the statutory text alone does not tell us with any degree of certainty the particular elements of §922(g) to which the term "knowingly" applies. And once it is recognized that the statutory text does not specify the *mens rea* applicable to §922(g)'s status element, there is no reason to assume that what Congress wanted was either a ***very high*** *mens rea* requirement (actual knowledge) or no *mens rea* at all. See *infra*, at 22. However, if we limit ourselves to those options, as the parties and the majority assume we must, the latter is more likely.

## C

### 1

That is so for at least six reasons. *First*, in no prior case have we inferred that Congress intended to impose a *mens rea* requirement on an element that concerns the defendant's own status. Nor has petitioner pointed to any statute with text that plainly evinces such a congressional intent. Instead, in instances in which Congress has expressly incorporated a *mens rea* requirement into a provision with an element involving the defendant's status, it has placed the *mens rea* requirement *after* the status element. For example, 18 U. S. C. §2251(b) punishes any "person having custody or control of a minor who knowingly permits such minor to engage in . . . sexually explicit conduct for the purpose of producing any visual depiction of such conduct." To show a violation, the Government need not prove that the defendant knew that the person under his custody or control was a minor. Even where the

issue of a defendant's status is open and shut, Congress
has taken pains to place the *mens rea* requirement so that
it clearly does not apply to the status element.  Thus, 18
U. S. C. §1924(a) punishes an "officer, employee, contrac-
tor, or consultant of the United States [who] knowingly
removes [classified] documents or materials without au-
thority."  And 21 U. S. C. §861(a) prohibits "any person at
least eighteen years of age [from] knowingly and inten-
tionally . . . receiv[ing] a controlled substance from a per-
son under 18 years of age."  So what the majority has done
in this case is groundbreaking.

*Second*, there are sound reasons for treating §922(g)'s
status element like its jurisdictional element.  The parties
agree that federal criminal statutes presumptively do not
require proof that an accused knew that his conduct satis-
fied a jurisdictional element, and our cases support this
proposition.  See *Luna Torres,* 578 U. S. ___; *United States*
v. *Yermian*, 468 U. S. 63 (1984); *United States* v. *Feola*,
420 U. S. 671 (1975).  We have never provided a compre-
hensive explanation of the basis for this presumption, but
our decision in *Feola,* which concerned the offense of as-
saulting a federal officer in violation of 18 U. S. C. §111, is
instructive.  Agreeing with the interpretation that had
been adopted with "practical unanimity" by the courts of
appeals, *Feola* held that an accused need not be shown to
have been aware of his victim's status.  We inferred that
this is what the statute means because requiring proof of
knowledge would undermine the statute's dual objectives
of protecting federal officers and preventing the obstruc-
tion of law enforcement.  420 U. S., at 679.

A similar consideration appears to provide the basis for
the conclusion that a §922(g) defendant need not know
that his possession of a gun is "in or affecting commerce."
Whether or not conduct satisfies that requirement in-
volves a complicated legal question; requiring proof of such
knowledge would threaten to effectively exempt almost

everyone but students of constitutional law from the stat-
ute's reach; and that would obviously defeat the statute's
objectives.

The reason for the rule exempting knowledge of jurisdic-
tional elements supports the conclusion that knowledge of
§922(g)'s status element is also not required. Whether a
defendant falls into one of the §922(g) categories often
involves complicated legal issues, and demanding proof
that a defendant understood those issues would seriously
undermine the statute's goals.

Take the category defined in §922(g)(4), which applies to
a person who has been "adjudicated as a mental defective,"
a term that is defined by regulation to mean

> "(a) A determination by a court, board, commission, or
> other lawful authority that a person, as a result of
> marked subnormal intelligence, or mental illness, in-
> competency, condition, or disease:
> "(1) Is a danger to himself or to others; or
> "(2) Lacks the mental capacity to contract or manage
> his own affairs." 27 CFR §478.11(a) (2019).

Congress thought that persons who fall into this category
lack the intellectual capacity to possess firearms safely. Is
it likely that Congress wanted §922(g) to apply only to
those individuals who nevertheless have the capacity to
know that they fall within the complicated definition set
out in the regulation? If a person has been found by a
court to present a "danger . . . to others" due to mental
illness or incompetency, should he escape the reach of
§922(g) because he does not know that a court has so
found?

Or consider the category defined by §922(g)(8), which
applies to a person

> "who is subject to a court order that—
> "(A) was issued after a hearing of which such person
> received actual notice, and at which such person had

an opportunity to participate;

"(B) restrains such person from harassing, stalking, or threatening an intimate partner of such person or child of such intimate partner or person, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child; and

"(C)(i) includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child; or

"(ii) by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury . . . ."

Under this reticulated provision, does the majority's interpretation require proof beyond a reasonable doubt that the defendant knew, when he possessed the gun or ammunition, (1) that his restraining order had been issued after a hearing, (2) that he had received actual notice of the hearing, (3) that he had been given an opportunity to participate at the hearing, (4) that the order covered harassing, stalking, or threatening, (5) that the person protected by the order qualified as his "intimate partner," and (6) that the order explicitly prohibited the "use, attempted use, or threatened use of physical force"?  Did Congress want a person who terrorized an intimate partner to escape conviction under §922(g) by convincing a jury that he was so blinded by alcohol, drugs, or sheer rage that he did not actually *know* some of these facts when he acquired a gun?

What about the category defined by §922(g)(9), which covers a person "who has been convicted in any court of a misdemeanor crime of domestic violence"?  Did Congress want this provision to apply only to those abusers who actually know that an offense for which they were convicted falls within the complicated definition of a "crime of

domestic violence"? The Members of this Court have been unable to agree on the meaning of that concept. Is it limited to offenses that have an element requiring proof that the abuser had a domestic relationship with the victim? In *United States* v. *Hayes*, 555 U. S. 415 (2009), the majority said no, but THE CHIEF JUSTICE and Justice Scalia disagreed. Can a conviction qualify if the offense required only recklessness? In *Voisine* v. *United States*, 579 U. S. \_\_\_ (2016), the Court said yes, but JUSTICE THOMAS and JUSTICE SOTOMAYOR dissented. Does this provision apply if only slight force is required for conviction by the misdemeanor provision under which the defendant was convicted? Again, the Members of the Court have disagreed. Compare *United States* v. *Castleman*, 572 U. S. 157, 162 (2014) (opinion of the Court), with *id.*, at 175 (opinion of Scalia, J.). If the Justices of this Court, after briefing, argument, and careful study, disagree about the meaning of a "crime of domestic violence," would the majority nevertheless require the Government to prove at trial that the defendant himself actually knew that his abuse conviction qualified? Can this be what Congress had in mind when it added this category in 1996 to combat domestic violence?

Serious problems will also result from requiring proof that an alien *actually knew*—not should have known or even strongly suspected but *actually knew*—that his continued presence in the country was illegal. Consider a variation on the facts of the present case. An alien admitted on a student visa does little if any work in his courses. When his grades are sent to him at the end of the spring semester, he deliberately declines to look at them. Over the summer, he receives correspondence from the college, but he refuses to open any of it. He has good reason to know that he has probably flunked out and that, as a result, his visa is no longer good. But he doesn't *actually know* that he is not still a student. Does that take him

outside §922(g)(8)?  Is it likely that this is what Congress wanted?

That is most doubtful.  Congress enacted §922(g)'s status-based restrictions because of its judgment that specific classes of people are "potentially irresponsible and dangerous" and therefore should be prohibited from owning or possessing firearms and ammunition.  *Barrett* v. *United States*, 423 U. S. 212, 218 (1976).  It is highly unlikely that Congress wanted defendants to be able to escape liability under this provision by deliberately failing to verify their status.

*Third*, while the majority's interpretation would frustrate Congress's public safety objectives in cases involving some of the §922(g) status categories, in prosecutions under the most frequently invoked category, possession by a convicted felon, the majority's interpretation will produce perverse results.  A felony conviction is almost always followed by imprisonment, parole or its equivalent, or at least a fine.  Juries will rarely doubt that a defendant convicted of a felony has forgotten that experience, and therefore requiring the prosecution to prove that the defendant knew that he had a prior felony conviction will do little for defendants.  But if the prosecution must prove such knowledge to the satisfaction of a jury, then under our decision in *Old Chief* v. *United States,* 519 U. S. 172 (1997), it is questionable whether a defendant, by offering to stipulate that he has a prior conviction, can prevent the prosecution from offering evidence about the nature of that offense.  And the admission of that information may work to a §922(g) defendant's detriment.

*Old Chief* recognized that a party is generally entitled to admit evidence to prove a necessary fact even if the opposing party offers to stipulate to that fact, *id.*, at 186–190, but the Court held that a §922(g) defendant's offer to stipulate to the fact that he had a prior felony conviction precluded the prosecution from offering evidence about the

identity of that offense. This holding appears to rest on the understanding that §922(g) requires proof of status but not of knowledge. See *id.*, at 190 (suggesting that a prosecutor would be entitled to seek admission of evidence of the nature of a prior felony if offered to prove knowledge). So if a defendant's knowledge is now necessary, the logic of *Old Chief* is undermined.

*Fourth*, the majority's interpretation of §922(g) would lead to an anomaly that Congress is unlikely to have intended. Another provision of §922—*i.e.*, §922(d)(5)(A)—prohibits firearms sellers from selling to persons who fall within a §922(g) category, but this provision does not require proof that the seller had actual knowledge of the purchaser's status. It is enough if the seller had "reasonable cause" to know that a purchaser fell into a prohibited category. A person who falls into one of the §922(g) categories is more likely to understand his own status than is a person who sells this individual a gun. Accordingly, it is hard to see why an individual who may fall into one of the §922(g) categories should have less obligation to verify his own situation than does the person who sells him a gun. Yet that is where the majority's interpretation leads.

*Fifth*, the legal landscape at the time of §922(g)'s enactment weighs strongly against the majority's reading. Long before Congress added the term "knowingly" to §924(a)(2), federal law prohibited certain categories of people from possessing firearms. See Federal Firearms Act, 52 Stat. 1250; Act of Oct. 3, 1961, Pub. L. 87–342, 75 Stat. 757; Omnibus Crime Control and Safe Street Act of 1968, Pub. L. 90–351, 82 Stat. 197; Gun Control Act of 1968, Pub. L. 90–618, 82 Stat. 1213, note following 18 U. S. C. §921. These predecessors of §922(g) did not expressly include any *mens rea* requirement, but courts generally interpreted them to require proof that a defendant acted knowingly in receiving, transporting, or possessing a firearm. The courts did not, however, require

proof that a defendant knew that he fell within one of the covered categories or that his conduct satisfied the stat- utes' interstate-commerce requirement. See, *e.g., United States* v. *Santiesteban*, 825 F. 2d 779, 782–783 (CA4 1987); *United States* v. *Schmitt*, 748 F. 2d 249, 252 (CA5 1984); *United States* v. *Oliver*, 683 F. 2d 224, 229 (CA7 1982); *United States* v. *Lupino*, 480 F. 2d 720, 723–724 (CA8 1973); *United States* v. *Pruner*, 606 F. 2d 871, 873–874 (CA9 1979).[3]

During this same period, many States adopted similar laws,[4] and no State's courts interpreted such a law to require knowledge of the defendant's status. See, *e.g., People* v. *Nieto*, 247 Cal. App. 2d 364, 368, 55 Cal. Rptr. 546, 549 (1966). *People* v. *Tenorio*, 197 Colo. 137, 144–145, 590 P. 2d 952, 957 (1979); *State* v. *Harmon*, 25 Ariz. App. 137, 139, 541 P. 2d 600, 602 (1975); *State* v. *Heald*, 382 A. 2d 290, 297 (Me. 1978); *Williams* v. *State*, 565 P. 2d 46, 49 (Okla. Crim. App. 1977).

All this case law formed part of the relevant backdrop of which we assume Congress was aware when it enacted §924(a)(2)'s *mens rea* requirement in 1986. See Firearms Owners' Protection Act, 100 Stat. 449, note following 18 U. S. C. §921. "We normally assume that, when Congress enacts statutes, it is aware of relevant judicial precedent." *Ryan* v. *Valencia Gonzales*, 568 U. S. 57, 66 (2013) (inter- nal quotation marks omitted). Where all the Federal Courts of Appeals and all the state courts of last resort to have interpreted statutes prohibiting certain classes of

---

[3] The majority highlights a single case where the Sixth Circuit did require knowledge that the defendant was under indictment, out of a concern about secret indictments. *Ante,* at 10 (citing *United States* v. *Renner*, 496 F. 2d 922, 924, 927 (1974)). But Congress addressed this concern separately when it enacted the *mens rea* requirement. It moved the provision involving indictments to its own statutory subsec- tion, §922(n), and punished only willful violations, see §924(a)(1)(D).

[4] See Brief for Everytown for Gun Safety as *Amicus Curiae* 6–8.

persons from possessing firearms agreed that knowledge of status was not required, it is fair to expect Congress to legislate more clearly than it has done here if it seeks to deviate from those holdings. Adding the *mens rea* provision in §924(a)(2) "clarif[ied]" that knowledge is the required *mens rea* with respect to a defendant's conduct, *ante,* at 10, but it did not indicate any disagreement with the established consensus that already applied that *mens rea* to §922(g)'s conduct element but not to the element of the defendant's status.[5]

Finally, the judgment of the courts of appeals should count for something. In *Feola*, the Court cited the "practical unanimity" of the courts of appeals, 420 U. S., at 676; see also *Luna Torres*, 578 U. S., at \_\_\_, \_\_\_ (slip op., at 15–16), and here, even after Congress added the *mens rea* requirement, all the courts of appeals to address the question have held that it does not apply to the defendant's status.[6] In addition, the decisions of the highest courts of

——————

[5] Contrary to the majority's suggestion, *ante,* at 10, the addition of the *mens rea* requirement does serve a purpose under this interpretation: It codifies the holdings of the lower courts that knowledge is required for the conduct element. If Congress had left §922(g) off the list of offenses requiring knowledge in §924(a)(2), some may have invoked *expressio unius* to argue that a violation of §922(g) required no *mens rea* at all. Cf. A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 107 (2012).

[6] See *United States* v. *Smith*, 940 F. 2d 710, 713 (CA1 1991); *United States* v. *Huet*, 665 F. 3d 588, 596 (CA3 2012); *United States* v. *Langley*, 62 F. 3d 602, 604–608 (CA4 1995) (en banc); *United States* v. *Rose*, 587 F. 3d 695, 705–706, and n. 9 (CA5 2009) (*per curiam*); *United States* v. *Dancy*, 861 F. 2d 77, 80–82 (CA5 1988) (*per curiam*); *United States* v. *Lane*, 267 F. 3d 715, 720 (CA7 2001); *United States* v. *Thomas*, 615 F. 3d 895, 899 (CA8 2010); *United States* v. *Kind*, 194 F. 3d 900, 907 (CA8 1999); *United States* v. *Miller*, 105 F. 3d 552, 555 (CA9 1997); *United States* v. *Games-Perez*, 667 F. 3d 1136, 1142 (CA10 2012); *United States* v. *Capps*, 77 F. 3d 350, 352–354 (CA10 1996); *United States* v. *Jackson*, 120 F. 3d 1226, 1229 (CA11 1997) (*per curiam*); *United States* v. *Bryant*, 523 F. 3d 349, 354 (CADC 2008).

States with laws similar to §922(g) have continued to unanimously interpret those provisions in the same way.[7]

2

Petitioner contends that all the Courts of Appeals to address the question now before us have gone astray because they have not given proper weight to the presumption that a *mens rea* requirement applies to every element of an offense that results in the criminalization of otherwise innocent conduct. See *Elonis* v. *United States*, 575 U. S. ___ (2015); *United States* v. *X-Citement Video, Inc.*, 513 U. S. 64 (1994); *Morissette* v. *United States*, 342 U. S. 246 (1952). This concern, which also animates much of the majority's analysis, is overstated.

The majority does not claim that the Constitution requires proof of *mens rea* for every status element or every element that has the effect of criminalizing what would otherwise be lawful conduct. Nor does it suggest that the presumption it invokes is irrebuttable for any other reason. That would be a radical conclusion because it has long been accepted that some status elements do not require knowledge. Laws that aim to protect minors, for example, often do not require proof that an offender had actual knowledge of the age of a minor who is the victim of a crime. "'The majority rule in the United States is that a defendant's knowledge of the age of a victim is not an essential element of statutory rape. . . . A defendant's good faith or reasonable belief that the victim is over the age of consent is simply no defense.'" *United States* v. *Gomez-Mendez*, 486 F. 3d 599, 603, n. 7 (CA9 2007) (citation omitted). Similarly, 18 U. S. C. §2243(a) makes it a crime, punishable by up to 15 years' imprisonment, knowingly to engage in a sexual act with a person who is between the

---

[7] See Brief for Everytown for Gun Safety as *Amicus Curiae* 11–19 (collecting cases).

ages of 12 and 16 and is less than four years younger than the accused. This statute expressly provides that knowledge of the victim's age need not be proved. §2241(d). I do not understand the majority to suggest that these laws, which dispense with proof of knowledge for public safety purposes, are invalid.

Not only is there no blanket rule requiring proof of *mens rea* with respect to every element that distinguishes between lawful and unlawful conduct, but petitioner exaggerates in suggesting that the so-called jurisdictional elements in federal criminal statutes comply with this "rule" because they do no more than provide a hook for prosecuting a crime in federal court. These elements often do more than that. They sometimes transform lawful conduct into criminal conduct: In a State that chooses to legalize marijuana, possession is wrongful only if the defendant is on federal property. Cf. 41 CFR §102–74.400 (2018). Jurisdictional elements may also drastically increase the punishment for a wrongful act. For example, the statute at issue in *Feola*, which criminalizes assault on a federal officer, doubles the possible prison sentence that would have been applicable to simple assault. Compare 18 U. S. C. §111 and §113. Just like a status element, a jurisdictional element can make the difference between some penalty and no penalty, or between significantly greater and lesser penalties.

Since a legislative body may enact a valid criminal statute with a strict-liability element, the dispositive question is whether it has done so or, in other words, whether the presumption that petitioner invokes is rebutted. This rebuttal can be done by the statutory text or other persuasive factors. See *Liparota* v. *United States*, 471 U. S. 419, 425 (1985) (applying presumption "[a]bsent indication of contrary purpose in the language or legislative history"); *X-Citement Video*, 513 U. S., at 70–72 (discussing statutory context in reaching conclusion); *Flores-*

*Figueroa*, 556 U. S., at 652; *id.*, at 660 (ALITO, J., concurring in part and concurring in judgment). And here, for the reasons discussed above, §922(g) is best interpreted not to require proof that a defendant knew that he fell within one of the covered categories.

I add one last point about what can be inferred regarding Congress's intent. Once it becomes clear that statutory text alone does not answer the question that we face and we are left to infer Congress's intent based on other indicators, there is no reason why we must or should infer that Congress wanted the same *mens rea* to apply to all the elements of the §922(g) offense. As we said in *Staples* v. *United States*, 511 U. S. 600, 609 (1994), "different elements of the same offense can require different mental states." And if Congress wanted to require proof of ***some*** *mens rea* with respect to the categories in §922(g), there is absolutely no reason to suppose that it wanted to impose one of the highest degrees of *mens rea*—actual knowledge. Why not require reason to know or recklessness or negligence? To this question, neither petitioner nor the majority has any answer.

D

Because the context resolves the interpretive question, neither the canon of constitutional avoidance nor the rule of lenity can be invoked to dictate the result that the majority reaches. As to the canon, we have never held that the Due Process Clause requires *mens rea* for all elements of all offenses, and we have upheld the constitutionality of some strict-liability offenses in the past. See *United States* v. *Freed*, 401 U. S. 601 (1971); *United States* v. *Dotterweich*, 320 U. S. 277 (1943); *United States* v. *Balint*, 258 U. S. 250 (1922); *United States* v. *Behrman*, 258 U. S. 280 (1922). In any event, if the avoidance of a serious constitutional question required us to infer that some *mens rea* applies to §922(g)'s status element, that

would hardly justify bypassing lower levels of *mens rea* and going all the way to actual knowledge.

As for the rule of lenity, we resort to it "only if, after seizing everything from which aid can be derived, we can make no more than a guess as to what Congress intended." *Muscarello* v. *United States*, 524 U. S. 125, 138 (1998) (alterations and internal quotation marks omitted). And what I have just said about the constitutional avoidance canon applies equally to lenity: It cannot possibly justify requiring actual knowledge.

## III

Although the majority presents its decision as modest, its practical effects will be far reaching and cannot be ignored. Tens of thousands of prisoners are currently serving sentences for violating 18 U. S. C. §922(g).[8] It is true that many pleaded guilty, and for most direct review is over. Nevertheless, every one of those prisoners will be able to seek relief by one route or another. Those for whom direct review has not ended will likely be entitled to a new trial. Others may move to have their convictions vacated under 28 U. S. C. §2255, and those within the statute of limitations will be entitled to relief if they can show that they are actually innocent of violating §922(g), which will be the case if they did not know that they fell into one of the categories of persons to whom the offense applies. *Bousley* v. *United States*, 523 U. S. 614, 618–619 (1998). If a prisoner asserts that he lacked that knowledge and therefore was actually innocent, the district courts, in a great many cases, may be required to hold a hearing, order that the prisoner be brought to court

––––––––

[8] The U. S. Sentencing Commission reports that in fiscal year 2017 there were 6,032 offenders convicted under 18 U. S. C. §922(g), with an average sentence of 64 months, https://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/Felon_in_Possession_FY17.pdf (as last visited June 19, 2019).

from a distant place of confinement, and make a credibil-
ity determination as to the prisoner's subjective mental
state at the time of the crime, which may have occurred
years in the past. See *United States* v. *Garth*, 188 F. 3d
99, 109 (CA3 1999); *United States* v. *Jones*, 172 F. 3d 381,
384–385 (CA5 1999); *United States* v. *Hellbusch*, 147 F. 3d
782, 784 (CA8 1998); *United States* v. *Benboe*, 157 F. 3d
1181, 1184 (CA9 1998). This will create a substantial
burden on lower courts, who are once again left to clean up
the mess the Court leaves in its wake as it moves on to the
next statute in need of "fixing." Cf. *Mathis* v. *United
States*, 579 U. S. ___, ___–___ (2016) (ALITO, J., dissenting)
(slip op., at 5–6).

Nor is there any reason to think that the Court's reason-
ing here will necessarily be limited to §922(g). The Court
goes out of its way to point out that it is not taking a
position on the applicability of *mens rea* requirements in
other status-based offenses, even where the statute lists
the status *before* the *mens rea. Ante,* at 7.

*       *       *

The majority today opens the gates to a flood of litiga-
tion that is sure to burden the lower courts with claims for
relief in a host of cases where there is no basis for doubt-
ing the defendant's knowledge. The majority's interpreta-
tion of §922(g) is not required by the statutory text, and
there is no reason to suppose that it represents what
Congress intended.

I respectfully dissent.