[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 23-14014

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

ROCKY M. THOMAS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 4:21-cr-00039-MW-MAL-1

_____

Before NEWSOM, LAGOA, and ANDERSON, Circuit Judges.

PER CURIAM:

Rocky Thomas appeals his conviction for possession of a firearm by a convicted felon. He argues that 18 U.S.C. § 922(g)(1) is unconstitutional in light of *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), because it proscribes conduct protected by the Second Amendment and is not consistent with this nation's tradition of firearms regulations.

Ordinarily, we review the constitutionality of a statute *de novo*. *United States v. Wright*, 607 F.3d 708, 715 (11th Cir. 2010). However, where a defendant failed to raise the issue of the statute's constitutionality in the district court, we review the issue only for plain error. *Id.* "Plain error occurs if (1) there was error, (2) that was plain, (3) that affected the defendant's substantial rights, and (4) that seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Id.* (quotation marks omitted). "[T]here can be no plain error where there is no precedent from the Supreme Court or this Court directly resolving" the issue. *United States v. Bolatete*, 977 F.3d 1022, 1036 (11th Cir. 2020) (quotation marks omitted).

The prior precedent rule requires us to follow a prior binding precedent unless it is overruled by this Court *en banc* or by the Supreme Court. *United States v. White*, 837 F.3d 1225, 1228 (11th Cir. 2016). "To constitute an overruling for the purposes of this prior panel precedent rule, the Supreme Court decision must be

clearly on point." *United States v. Kaley*, 579 F.3d 1246, 1255 (11th Cir. 2009) (quotation marks omitted). "In addition to being squarely on point, the doctrine of adherence to prior precedent also mandates that the intervening Supreme Court case actually abrogate or directly conflict with, as opposed to merely weaken, the holding of the prior panel." *Id.* "The prior panel precedent rule applies regardless of whether the later panel believes the prior panel's opinion to be correct, and there is no exception to the rule where the prior panel failed to consider arguments raised before a later panel." *United States v. Gillis*, 938 F.3d 1181, 1198 (11th Cir. 2019).

The Second Amendment states, "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. Section 922(g) of Title 18 of the United States Code prohibits anyone who has been convicted of a crime punishable by more than one year of imprisonment from possessing a firearm or ammunition. 18 U.S.C. § 922(g)(1). "A separate provision, § 924(a)(2), adds that anyone who 'knowingly violates' the first provision shall be fined or imprisoned for up to 10 years." *Rehaif v. United States*, 588 U.S. 225, 227 (2019) (quoting 18 U.S.C. § 924(a)(2) (2018)) (emphasis omitted).

In *District of Columbia v. Heller*, the Supreme Court considered a "law-abiding" citizen's challenge to the District of Columbia's total ban of the possession of handguns, including in the home. *See* 554 U.S. 570, 574–76, 628, 635 (2008). The Court held

that the Second Amendment right to bear arms presumptively "belongs to all Americans," but is not unlimited.  *Id.* at 581, 626.  It noted that, while it "[did] not undertake an exhaustive historical analysis . . . of the full scope of the Second Amendment, nothing in [its] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons."  *Id.* at 626.  The Court went on to reject an "interest-balancing" approach to Second Amendment analysis, reasoning that the amendment "is the very *product* of an interest balancing by the people . . . [and] surely elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home."  *Id.* at 634–35 (emphasis in original).  Thus, the Court "h[e]ld that the District's ban on handgun possession in the home violate[d] the Second Amendment."  *Id.* at 635.

Following *Heller*, courts of appeals adopted a "two-step" framework for assessing Second Amendment challenges: (1) determine whether the law in question regulates activity within the scope of the right to bear arms based on its original historical meaning; and (2) if so, apply means-end scrutiny test to determine the law's validity.  *See Bruen*, 597 U.S. at 18–19.

In *United States v. Rozier*, we relied on *Heller* to hold that § 922(g)(1) did not violate the Second Amendment, "even if a felon possesses a firearm purely for self-defense."  598 F.3d 768, 770 (11th Cir. 2010).  The *Rozier* decision did not rely on means-end scrutiny to conclude that § 922(g)(1) was constitutional, but rather recognized that prohibiting felons from possessing firearms was a

"presumptively lawful longstanding prohibition." *Id.* at 771 (quotation marks omitted). We reasoned that the Supreme Court's statement in *Heller* "that 'nothing in [the] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons' . . . suggest[ed] that statutes disqualifying felons from possessing a firearm under any and all circumstances do not offend the Second Amendment." *Id.* (quoting *Heller*, 554 U.S. at 626).

In a footnote, we rejected Rozier's argument that this statement from *Heller* was merely dicta and not to be afforded authoritative weight, reasoning that: (1) it "limit[ed] the [*Heller*] opinion to possession of firearms by *law-abiding* and *qualified* individuals," and thus, was necessary to the decision reached; and (2) even if the statement was superfluous to *Heller*'s central holding, we would still afford it considerable weight, as dicta from the Supreme Court is not to be lightly ignored. *Id.* at 771 n.6 (emphasis in original). Ultimately, we concluded that Rozier's purpose for possessing a firearm, and the fact that the firearm was constrained to his home, was immaterial because felons as a class could be excluded from firearm possession. *Id.* at 771.

In *Bruen*, applicants who had been denied unrestricted licenses to carry a handgun in public brought a civil suit under 42 U.S.C. § 1983. 597 U.S. at 15–16. The petitioners argued that New York regulations—that required even "ordinary, law-abiding, adult citizens" to demonstrate "proper cause" to obtain concealed carry licenses—violated their Second and Fourteenth Amendment

rights. *See id.* at 8–16, 31, 60, 71. Although the district court dismissed the suit and the Second Circuit affirmed, the Supreme Court reversed, reasoning that reliance on means-end analysis in the Second Amendment context was inconsistent with *"Heller*'s methodology [that] centered on constitutional text and history." *Id.* at 16–24.

Further, the Court noted that *"Heller . . .* demands a test rooted in the Second Amendment's text, as informed by history," and announced the appropriate standard for Second Amendment analysis: (1) "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct"; and (2) if the conduct is presumptively protected, "[t]he government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* at 19, 24. "Only then may a court conclude that the individual's conduct falls outside Second Amendment's" protections. *Id.* at 24. In *Bruen*, as it did in *Heller*, the Supreme Court referenced the Second Amendment rights of "law-abiding, responsible citizens." *Id.* at 26, 38 n.9, 70; *Heller*, 554 U.S. at 635.

In *United States v. Dubois*, 94 F.4th 1284 (11th Cir. 2024), we rejected a defendant's Second Amendment challenge to § 922(g)(1) under *Bruen*. We emphasized our determination in *Rozier* that "th[e] language from *Heller* was not dicta because it limited the Second Amendment right to *law-abiding* and *qualified* individuals." *Id.* at 1292 (quotation marks omitted) (emphasis in original). We then determined that *Bruen* did not abrogate *Rozier* because: (1) *Rozier*

relied on *Heller*; (2) *Heller* labeled felon-in-possession prohibitions as "a presumptively lawful longstanding tradition," and thus, made clear that felons are categorically excluded from the Second Amendment's protections; and (3) "*Bruen* repeatedly stated that its decision was faithful to *Heller*," and, "like *Heller*, repeatedly described the [Second Amendment] right as extending only to 'law-abiding, responsible citizens.'" *Id*. at 1291–93. We also noted that *Bruen* confirmed that *Heller* "correctly relied on the historical understanding of the Amendment to demark the limits on the exercise of that right." *Id*. at 1292–93 (quotation marks omitted). We held that, because clearer instruction was required from the Supreme Court before we could reconsider § 922(g)(1)'s constitutionality, we were still bound by *Rozier*, and Dubois's challenge therefore failed. *Id*. at 1293.

The Supreme Court has not directly addressed the constitutionality of § 922(g)(1) since its decision in *Bruen*, but recently applied the *Bruen* framework in *United States v. Rahimi*, 144 S. Ct. 1889 (2024). The Court held that § 922(g)(8), which prohibits the possession of firearms by individuals subject to a domestic violence restraining order, did not facially violate the Second Amendment because regulations prohibiting individuals who pose a credible threat of harm to others from misusing firearms are part of this country's historical tradition. *Rahimi*, 144 S. Ct. at 1889, 1896, 1898, 1902. The Supreme Court noted that courts have "misunderstood" the *Bruen* methodology in that the Second Amendment permitted not just regulations identical to those in existence in 1791, but also those regulations that are "consistent with the principles that

underpin our regulatory tradition" and are "relevantly similar to laws that our tradition is understood to permit." *Id.* at 1898–99 (quotation marks omitted). The Court stated that the right to bear arms "was never thought to sweep indiscriminately" and extensively detailed the historical tradition of firearm regulations, including the prohibition of classes of individuals from firearm ownership. *Id.* at 1897, 1899–1901. Further, it highlighted *Heller*'s statement that felon-in-possession prohibitions are "presumptively lawful." *Id.* at 1902 (quotation marks omitted).

Additionally, the Court held that § 922(g)(8) was constitutional as applied to Rahimi because the restraining order to which Rahimi was subject included a finding that he posed "a credible threat to the physical safety" of another, and the government provided "ample evidence" that the Second Amendment permitted "the disarmament of individuals who pose a credible threat to the physical safety of others." *Id.* at 1896–98. The Supreme Court noted that, "like surety bonds of limited duration," the restriction imposed on Rahimi's rights by § 922(g)(8) was temporary because it applied only while Rahimi was subject to a restraining order. *Id.* at 1902. The Supreme Court also rejected the government's argument, in response to Rahimi's as-applied challenge, that citizens who are not "responsible" may be disarmed as a class, noting that the term "responsible" is too vague to act as a rule and did not derive from caselaw. *Id.* at 1903.

Here, Thomas's conviction does not offend the constitution under any standard of review. As Thomas acknowledges, in

23-14014          Opinion of the Court          9

*Dubois*, we held that *Bruen* did not abrogate our holding in *Rozier* that § 922(g)(1) is constitutional.  We thus conclude that Thomas's challenge is foreclosed by this Circuit's precedent holding that § 922(g)(1) survives Second Amendment scrutiny.  We therefore affirm Thomas's conviction for possession of a firearm by a convicted felon.

**AFFIRMED.**